MORTON SAMOSE v. HAMMER-PASSERO NORWALK
CHIROPRACTIC GROUP, P.C. ET AL.
(8537)

DUPONT, C. J., SPALLONE and NORCOTT, Js.

---

[7] The plaintiff's motion to dismiss the appeal because of mootness is denied.

Argued October 4, 1990—decision released February 12, 1991

*William F. Gallagher,* with whom were *Robert L. Hirtle* and, on the brief, *John R. McGrail* and *Robert P. Borquez,* for the appellants (named defendant et al.).

*Carl A. Secola, Jr.,* for the appellee (plaintiff).

NORCOTT, J. This case involves a chiropractic malpractice action tried to a jury. The defendants appeal from the judgment rendered on the verdicts in favor of the plaintiff against the defendants Warren Hammer, a chiropractor, and the Hammer-Passero Norwalk Chiropractic Group, P.C., also known as both the Norwalk Chiropractic Group, P.C., and the Chiropractic Center (hereinafter the Group ).[1] The defendants claim that the trial court improperly refused to direct judgment or to set aside the verdict and failed to direct a verdict for the defendants (1) because the plaintiff failed to establish which defendant chiropractor caused his injury, (2) because the plaintiff failed to establish the

---

[1] The jury returned a verdict in favor of the defendant Marino R. Passero, also a chiropractor. He is, therefore, not a party to this appeal.

risks and alternative courses of treatment of which he should have been informed by the defendants, (3) because the plaintiff failed to prove causation on his action for lack of informed consent, and (4) because the court failed to set aside the verdict as excessive. We affirm the trial court's judgment.

From the evidence presented at trial, the jury could have reasonably found the following facts. On July 17, 1986, the defendant Hammer performed an adjustment on the plaintiff's back. The defendant Passero performed a second back adjustment on the plaintiff on the following day. Passero testified that the adjustment he performed involved only "soft tissue manipulation" by hand. During the ensuing week, the plaintiff's back condition worsened and he ultimately had to undergo surgery for the removal of two extended disc fragments and the decompression of his spine.

The plaintiff brought an action for damages for the injuries he allegedly sustained as a result of the defendants' chiropractic malpractice and for their alleged performance of both chiropractic manipulations without his informed consent. At the conclusion of the plaintiff's case-in-chief, the trial court denied the defendants' motion for a directed verdict in which they alleged that the plaintiff had failed to prove causation.[2] The jury then returned a general verdict in favor of the plaintiff against Hammer and the Group for $472,483.27. Thereafter, those defendants moved to set aside the verdict and for judgment notwithstanding the verdict on the grounds that (1) there was no evidence presented at trial on causation and (2) the verdict was excessive. The trial court denied the defendants' motions and this appeal ensued.

[2] After the defendants' oral motion for a directed verdict, the plaintiff unsuccessfully moved to reopen his case. The court, after reserving decision, denied the defendants' motion as well.

# I

On appeal, the defendants first challenge the trial court's refusal to direct a verdict for them. They claim that the plaintiff's evidence at trial failed to establish certain elements that are essential to a successful malpractice action.

" 'A directed verdict is not favored but is justified if, on the evidence, the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed.' *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984); *Buckley* v. *Lovallo,* 2 Conn. App. 579, 583, 481 A.2d 1286 (1984). 'On reviewing the action of the trial court in first directing and thereafter refusing to set the verdict aside, the evidence must be considered in the light most favorable to the plaintiff. *Johnson* v. *Consolidated Industries, Inc.,* 153 Conn. 522, 524, 218 A.2d 380 (1966); *Yeske* v. *Avon Old Farms School, Inc.,* 1 Conn. App. 195, 201, 470 A.2d 705 (1984).' *Kegel* v. *McNeely,* supra." *Campbell* v. *Pommier,* 5 Conn. App. 29, 31–32, 496 A.2d 975 (1985). "The trial court's action, in refusing to set aside a verdict, cannot be reviewed in a vacuum because such a motion seeks to deprive 'a litigant in whose favor a verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury . . . .' *Jacobs* v. *Goodspeed,* 180 Conn. 415, 417, 429 A.2d 915 (1980). This requires the examination of the evidential underpinnings of the verdict." *Champagne* v. *Raybestos-Manhattan, Inc.,* 212 Conn. 509, 544, 562 A.2d 1100 (1989). A review of the evidence in this case leads us to conclude that the defendants' claim must fail.

In order to prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard

of care, and (3) a causal connection between the deviation and the claimed injury. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 334, 430 A.2d 1 (1980); see also *Mozzer* v. *Bush,* 11 Conn. App. 434, 438 n.4, 527 A.2d 727 (1987). It is clear from a review of the evidence that the jury could have reasonably found (1) that there was a national standard of care regarding spinal manipulation by chiropractors and (2) that the treatment of the plaintiff at the Group office on July 17 and 18, 1986, deviated from that standard of care. Specifically, Jonathan McCullough, an expert witness on chiropractic medicine and a chiropractor himself, testified that the failure to take X rays of the seventy-six year old plaintiff, coupled with a subsequent spinal manipulation, was "a rather blatant deviation from the standard of accepted care" because of the "degenerative joint change" in the geriatric spine.

The defendants contend, however, that the plaintiff failed to prove which chiropractor, if either, caused his injury. The defendants further argue that there was no evidence presented at trial from which the jury could have determined which chiropractor was at fault or to what degree.

It is axiomatic that causation must be removed from the realm of speculation and conjecture. *Doe* v. *Manheimer,* 212 Conn. 748, 765, 563 A.2d 699 (1989); cf. *Pisel* v. *Stamford Hospital,* supra, 341–42. Our review of the evidence presented in this case, however, does not support the defendants' claim that the jury could only have speculated as to which chiropractor caused the plaintiff's injury. The plaintiff presented sufficient evidence from which the jury could have concluded that Hammer's manipulation deviated from the standard of care and was causally connected to the plaintiff's injury.

The theory of the plaintiff's case was that the Group and its agents, Hammer and Passero, were jointly and

severally liable for the acts that caused the plaintiff's injury. In support of this theory of recovery, the plaintiff presented evidence that on two successive days both Hammer and Passero manipulated the plaintiff's back. The jury heard conflicting testimony as to the degree of force and type of spinal manipulations used on those occasions.

The plaintiff also presented the testimony of Charles Needham, a neurosurgeon who testified as an expert on causation. While the defendants are accurate in claiming that Needham would not say *which* chiropractor's manipulation caused the plaintiff's injury, it is disingenuous to suggest that Needham, nonetheless, did not testify that the injury was caused by "whatever chiropractor was involved." In addition, the jury heard testimony regarding causation from the plaintiff, both defendant chiropractors and McCullough, a second expert witness. McCullough's direct examination in particular is replete with testimony that Hammer's manipulation ruptured the plaintiff's disc and was thus responsible for the plaintiff's injury.

Although the plaintiff premised his case solely on the theory of joint liability, the trial court's charge allowed the jury to find that Hammer and Passero were jointly liable for the plaintiff's injuries or individually liable for separate independent acts.[3] See *Reilly* v. *DiBianco,*

---

[3] The trial court charged, in pertinent part, on the liability of the chiropractors as follows:

"If you find that *either Dr. Hammer or Dr. Passero or both* violated the standard of proper chiropractic practice in one of these ways, and you further find that the plaintiff's resulting damages came from the failure in any single one of these respects, or to put it another way, that one or more than one of these failures was a substantial factor in the production of the plaintiff's injuries, then the plaintiff has prevailed on issues of negligence and of proximate causation and you must find for the plaintiff." (Emphasis added.)

The court also instructed the jury that "[a]lthough each defendant, Dr. Hammer and Dr. Passero, acted independently of the other so far as pur-

6 Conn. App. 556, 507 A.2d 106, cert. denied, 200 Conn. 804, 510 A.2d 193 (1986). No special interrogatories were submitted to the jury in this case, and the jury returned a general verdict. The general verdict rule requires this court to presume that the jury found every issue in favor of the prevailing party. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 202, 520 A.2d 208 (1987). Thus, we must conclude that the jury in the present case, applying the trial court's instructions to the evidence it believed to be the most credible, found that Hammer alone was responsible for the plaintiff's injury.

The defendants rely heavily on the case of *Mozzer* v. *Bush,* supra, and argue that the result in that case controls our decision in the present case. In *Mozzer,* the plaintiff sued to recover for personal injuries that she had allegedly sustained as a result of the malpractice of two defendant physicians who, she claimed, had not properly positioned and monitored her right arm during an operation, resulting in an ulnar neuropathy. In sustaining the trial court's granting of a directed verdict in favor of the defendants, this court found that "[t]he plaintiff [had] presented *no* evidence as to what occurred during the surgical procedure and completely

---

pose or intent are concerned, if the negligence of each concurred and cooperated with the other in the production of a single and injurious result, that is the injury to Mr. Samose's back, the plaintiff, Mr. Samose, is entitled to recover *from either party or both parties* so concurring in the production of the injurious result." (Emphasis added.)

Although the plaintiff alleged only joint liability in his complaint, neither party objected to these instructions which, in effect, permitted the jury to find against either chiropractor on the basis of his individual liability. In addition, the defendant did not object to the admission of evidence presented by the plaintiff from which the jury could have reasonably concluded that Hammer alone caused the plaintiff's injuries. Finally, neither party has argued on appeal that the court's charge exceeded the boundaries of the plaintiff's complaint. Accordingly, as no challenge was made to the trial court's actions either at trial or on appeal, the jury, in accordance with the court's instructions and the evidence presented, properly found Hammer individually liable for the plaintiff's injuries.

failed to identify any specific act of negligence on the part of any person." (Emphasis added.) Id., 438 n.4. In the present case, in contrast, the plaintiff met his burden of presenting evidence as to what took place at the chiropractors' offices and who acted on him on the dates in question. *Mozzer* is thus distinguishable from this case and does not control its outcome.

We conclude that there was sufficient evidence at trial from which the jury could have reasonably determined that Hammer alone was negligent and responsible for the chiropractic malpractice against the plaintiff. Because there was no question throughout the trial as to the principal-agent relationship between the Group and Hammer, the professional corporation was correctly held liable for the acts of its duly authorized agent.

## II

The defendants next claim that the plaintiff failed to establish the risks and alternative courses of treatment about which they should have informed him, and that, therefore, the trial court improperly denied the defendants' aforementioned motions. This claim requires little discussion. An examination of the record reveals that Needham, an expert witness, testified regarding the risks associated with the type of spinal manipulations performed on the plaintiff. If this testimony was accepted by the jurors as credible, they could reasonably have concluded that chiropractic spinal manipulation could result in "a spectrum of things," especially on a seventy-six year old man with a "brittle spine." It is clear from the evidence that there were risks associated with the types of manipulation involved here. The defendant chiropractors claimed that they failed to inform the plaintiff of risks or possible alternate courses of treatment simply because they considered their therapy to be without risk. We cannot accept

the defendants' contention that, under these circumstances, the plaintiff should have established more specifically those things within the "spectrum" referred to by Needham, things of which, by the defendant doctors' own testimony, they would not have informed him because, in their opinion, none of them would occur. This claim is therefore without merit.

## III

Similarly, the defendants' third claim, that the plaintiff failed to establish causation as part of his action for lack of informed consent, must be rejected. In the second count of the plaintiff's amended complaint, he alleged that "[t]he defendants failed to advise the plaintiff of all the risks of spinal manipulation and treatment *in order for him to give his informed consent* to the spinal manipulation and treatment." (Emphasis added.) As previously discussed, the jury could reasonably have found from the evidence (1) that the injuries sustained by the plaintiff were caused by Hammer's spinal manipulation, and (2) that, by their own admissions, neither chiropractor discussed with the plaintiff any potential risks associated with spinal manipulations. Additionally, the plaintiff testified on direct examination as follows:

"Q. Did [Hammer] ever discuss with you any potential risks associated with manipulation?

"A. No.

"Q. So he never—

"A. I would have walked out of the office if he did."

In light of this evidence, we reject the defendants' argument that the plaintiff failed to offer any evidence whatsoever on the element of causation as part of his action for lack of informed consent.

## IV

The defendants' final claim is that the trial court improperly failed to set aside the verdict as excessive. "The claim that the amount of a verdict is excessive raises a question of law and not of fact. *Vandersluis* v. *Weil,* 176 Conn. 353, 358, 407 A.2d 982 (1978)." *Champagne* v. *Raybestos-Manhattan, Inc.,* supra, 556. On appeal, the determinative inquiry is whether the verdict so shocks the conscience as to compel a reviewing court's conclusion that it was due to partiality, prejudice or mistake. Id.; see also *O'Brien* v. *Seyer,* 183 Conn. 199, 208, 439 A.2d 292 (1981). Our Supreme Court has reasoned that to survive a challenge based on excessiveness a verdict must fall "somewhere within the necessarily uncertain limits of just damages . . . ." *Birgel* v. *Heintz,* 163 Conn. 23, 28, 301 A.2d 249 (1972).

Where the trial court has denied a motion to set aside a verdict as excessive, we are limited to a determination of whether the court abused its discretion, and "its decision 'can be disturbed only by considerations of the most persuasive character, as where the verdict shocks the sense of justice or the mind is convinced that it is in fact entirely disproportionate to the injury. [W. Maltbie,] Conn. App. Proc., p. 151.' . . ." (Citations omitted.) *Champagne* v. *Raybestos-Manhattan, Inc.,* supra, 557.

The defendants claim that a $472,483.27 verdict is disproportionate to the injury sustained by this plaintiff, a man with a seven year life expectancy who, despite his claims of pain and suffering, still conducts his social and business affairs in virtually the same manner as before the injury. The defendants also note that the plaintiff claimed no lost wages in this action. Under these circumstances, the defendants argue that the verdict of almost one-half million dollars was excessive. We disagree.

We first note that the plaintiff introduced uncontroverted evidence that he suffers a 25 to 30 percent permanent partial disability as a result of his injury. Furthermore, the jury heard the testimony of the plaintiff's wife that the plaintiff's life-style, which once included many social activities and vacations, has been curtailed because of the resulting disability. She also testified that her observations of his everyday activities led her to conclude that "[t]here's an awful lot he can't do. He's always been a very active man and it's just changed." On the basis of this evidence, we cannot say or speculate as to how the jury arrived at its figure for damages. We can say, however, that the evidence was sufficient to support that award which, although generous, did not cross the line of impermissibility under our standards of review. The trial court did not abuse its discretion with respect to this verdict.

The judgment is affirmed.

In this opinion the other judges concurred.