RANDY WILLIAMS, ADMINISTRATOR (ESTATE OF MARQUES WILLIAMS) *v.* LEON CHAMEIDES ET AL. (10080)

O'CONNELL, HEIMAN and CRETELLA, Js.

■■■■■■■■

Argued January 17—decision released March 3, 1992

*Joseph P. Kenny,* with whom, on the brief, was *Jay Melley III,* for the appellant (plaintiff).

*Louis B. Blumenfeld,* with whom, on the brief, were *John F. Scully* and *William J. Scully,* for the appellee (named defendant).

HEIMAN, J. The plaintiff in this medical malpractice action, Randy Williams, administrator of the estate of his son, Marques Williams, appeals from the trial court's judgment in favor of the defendant Leon Chameides, a pediatric cardiologist.[1] The plaintiff claims that the trial court improperly directed the jury to return a verdict in favor of the defendant. We affirm the trial court's judgment.

---

[1] The plaintiff instituted the underlying action against Chameides and Hartford Hospital. The case was withdrawn as to Hartford Hospital on July 10, 1990. The plaintiff also instituted a separate action against Paul Preissler seeking damages for alleged medical malpractice. While the actions against Chameides and Preissler were joined for purposes of trial, the case against Preissler was withdrawn before the trial's conclusion. Thus, Chameides is the sole appellee.

The evidence presented at trial reasonably supports the following. The plaintiff's decedent was born with a severe heart defect on June 12, 1984. His heart was not connected to his pulmonary artery, which normally would have supplied blood to his lungs. As a result of the decedent's heart condition, his parents consulted with Chameides, whose associate treated the condition by inserting a shunt to divert blood from the decedent's subclavian artery to his lungs. Because this remedy, though the standard method of treating the condition, is inherently temporary, Chameides concluded that the shunt would probably have to be replaced as the youngster grew.

In June, 1985, Chameides indicated that the decedent would require a cardiac catheterization. After examining the decedent on January 24, 1986, Chameides recommended that the catheterization be performed within the next few weeks and that a new shunt be inserted sometime thereafter. The defendant performed the catheterization on January 29, 1986, and concluded that the existing shunt had narrowed, restricting the flow of blood to the pulmonary artery. He also found that collateral blood vessels which supplied additional blood to the pulmonary artery had formed since the decedent's birth. Because the collateral vessels were providing nearly as much blood to the pulmonary artery as was the shunt, Chameides felt that the decedent did not require the insertion of a replacement shunt for survival. Nonetheless, he felt that a new shunt clearly was needed to relieve tiredness and cyanosis, a bluish skin coloration caused by insufficient oxygen in the blood. Because Chameides believed that the new shunt was not necessary to sustain the decedent's life, he classified the operation as elective rather than as an emergency. Accordingly, he directed Karen Toce, a nurse he employed, to arrange an appointment to install a new shunt at a time within

the next few months that was convenient for the decedent's family, the surgeon and the pediatric cardiologist. Despite the wish of the decedent's family that the defendant install the replacement shunt in late February, Toce scheduled the operation for April 23, 1986. The decedent died on March 31, 1986, after suffering heart failure.

The administrator of the decedent's estate sued Chameides in March, 1988. Three distinct theories of negligence can be distilled from the complaint: (1) medical malpractice in failing to schedule and perform the second shunt operation soon enough, (2) respondeat superior based on Toce's negligent failure to return the telephone calls of the decedent's mother regarding the scheduling of the second shunt operation and to schedule the operation in accordance with the wishes of the decedent's family and (3) medical malpractice in failing to inform the decedent's parents of the risks associated with delaying the second shunt operation and of their option to obtain a second opinion regarding the second shunt operation.

At the jury trial, the plaintiff's sole expert witness was Chameides himself. In addition to Chameides' testimony, the plaintiff relied on a letter of condolence written by Chameides to the decedent's parents following the decedent's death.[2] In the letter, the defendant expressed sympathy to the parents and speculated that the decedent died when the shunt suddenly closed, producing a sudden drop in the oxygen level of the decedent's blood. He further surmised "[w]ould it have made any difference had we performed the shunt sooner? I must come to the sad conclusion that it probably would have."

At the conclusion of the plaintiff's case-in-chief, the defendant orally moved for a directed verdict. After

---

[2] The letter was admitted as a full exhibit.

hearing argument on the motion, the court instructed the jury that although they might have been able to find that Chameides caused the decedent's death, the plaintiff had offered no evidence regarding the nature or breach of the defendant's duty of care. The court then instructed the jury to retire to the jury room and elect a foreperson to sign a directed verdict form for the defendant. The jury complied, and the court accepted the verdict. After denying the plaintiff's motion to set aside the verdict, the court rendered judgment for the defendant.

The plaintiff first claims that the trial court improperly determined that he had failed to produce expert testimony establishing either the nature or the breach of the defendant's duty of care. We disagree.

A directed verdict, while disfavored, should be ordered whenever a jury could reach no other conclusion without speculation. See *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986); *Burke* v. *West Hartford,* 147 Conn. 149, 151–52, 157 A.2d 757 (1960); *Merola* v. *Burns,* 21 Conn. App. 633, 636, 575 A.2d 1025 (1990). In reviewing the trial court's directing and then refusing to set aside a verdict, we consider the evidence in the light most favorable to the plaintiff. *Samose* v. *Hammer-Passero Norwalk Chiropractic Group, P.C.,* 24 Conn. App. 99, 102, 586 A.2d 614, cert. denied, 218 Conn. 903, 588 A.2d 1079 (1991); *Campbell* v. *Pommier,* 5 Conn. App. 29, 31–32, 496 A.2d 975 (1985).

"In order to prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." *Samose* v. *Hammer-Passero Norwalk Chiropractic Group, P.C.,* supra, 102–103. Generally, expert testimony is required to

establish both the standard of care to which the defendant is held and the breach of that standard. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 130–31, 540 A.2d 666 (1988); *Shelnitz* v. *Greenberg,* 200 Conn. 58, 66, 509 A.2d 1023 (1986); *Cross* v. *Huttenlocher,* 185 Conn. 390, 393, 440 A.2d 952 (1981). The plaintiff may rely on the defendant's testimony to meet its burden of producing positive evidence of an expert nature from which the jury could reasonably and logically conclude that the defendant was negligent. *Snyder* v. *Pantaleo,* 143 Conn. 290, 294, 122 A.2d 21 (1956).[3]

The plaintiff claims not that Chameides negligently performed a procedure, but that he negligently failed to perform the shunt operation soon enough. The plaintiff offered no expert testimony, however, regarding the "degree of care, skill and diligence which physicians in the same general line of practice ordinarily possess and exercise in similar cases." *Cross* v. *Huttenlocher,* supra. Indeed, the sole evidence on the subject came when the defendant, during examination by his attorney, testified that the prevailing standard of care required only that the second shunt be installed within a few months of the catheterization and that he did not deviate from that standard.

The plaintiff's contention that the jury reasonably could have inferred that the need for a second shunt was immediate from the defendant's statement that a second shunt was clearly needed contains two fatal flaws. First, even if the plaintiff stated that he believed that a second shunt should be installed immediately, the jury could not infer from this that the prevailing medical practice was to install the shunt immediately.

---

[3] The plaintiff does not claim that Chameides was so grossly negligent that expert testimony was unnecessary. See *Puro* v. *Henry,* 188 Conn. 301, 305, 449 A.2d 176 (1982) (expert testimony not necessary where "there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence").

See *Davis* v. *Virginian R. Co.*, 361 U.S. 354, 357–58, 80 S. Ct. 387, 4 L. Ed. 2d 366 (1960); *Evans* v. *Bernhard*, 23 Ariz. App. 413, 416 , 533 P.2d 721 (1975); *Montana Deaconess Hospital* v. *Gratton*, 169 Mont. 185, 190, 545 P.2d 670 (1976). Second, the defendant's statement that a second shunt was clearly needed contained no temporal component. The jury could not have inferred one without speculating. While we remain mindful that the plaintiff need not elicit a specific expression of opinion that the defendant was negligent; *Snyder* v. *Pantaleo,* supra, 294–95; *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153 (1927); the plaintiff must produce sufficient expert evidence to allow the jury to determine the applicable standard of care without speculation. Because the plaintiff failed to sustain this burden, the trial court properly removed this issue from the jury's consideration. See *Cross* v. *Huttenlocher,* supra.

The plaintiff next contends that the trial court incorrectly determined that expert testimony was necessary to support his claim that Chameides is liable in respondeat superior for the negligent actions of his employee, Toce, in scheduling the second shunt operation. He argues that because the applicable duty of care in a claim based on respondeat superior is that owed by Toce, and expert evidence is unnecessary to establish Toce's duty, the trial court improperly directed a verdict based on the lack of expert evidence. The plaintiff's claim that Toce was negligent in scheduling the appointment, however, presupposes that Toce reasonably should have foreseen that harm would result from her actions. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 333, 430 A.2d 1 (1980). Because, as we stated earlier, the jury could not have so concluded without resorting to speculation, the trial court properly directed a verdict as to this claim.

The plaintiff has not briefed any claim pertaining to the third theory of liability set forth in his complaint, that the defendant negligently failed to inform the decedent's parents regarding the risk of delaying the second shunt operation and their option of obtaining a second opinion regarding the second shunt operation. Accordingly, any claim that the trial court improperly directed a verdict as to this claim has been abandoned. See Practice Book § 4065; *State* v. *Anthony,* 24 Conn. App. 195, 210, 588 A.2d 214, cert. dismissed, 218 Conn. 911, 591 A.2d 813, cert. denied,   U.S.   , 112 S. Ct. 312, 116 L. Ed. 2d 254 (1991).

The plaintiff further claims that the trial court improperly restricted the presentation of his case by limiting his interpretation of the word "convenience." In a colloquy that occurred outside the jury's presence, the trial court questioned the plaintiff's counsel regarding the factual basis for his respondeat superior claim. The attorney indicated that by failing to schedule the second shunt operation according to the wishes of the decedent's parents, Toce violated the defendant's instruction to schedule the operation for a time that was convenient. The following exchange then occurred:

"The Court: Don't fudge those two words. What they want and what is convenient for them are two very distinct things.

"[Plaintiff's Attorney]: What other yardstick would one employ if it's the convenience of the family?

"The Court: I'll tell you what other yardstick you can employ. Vacation, which they knew about, a back operation, the school scheduling. There are a lot of things that change 'want' to 'convenient.' And I don't think we have any evidence that it was ever expressed to anybody as to what the convenient date was that the plaintiffs wanted."

We will not consider the merits of this claim. Although the plaintiff's attorney clearly disagreed with the trial

court's position, he failed either to state a legal ground for his objection or to except to the trial court's ruling, if any. See Practice Book § 288; *Lombardi* v. *Groton,* 26 Conn. App. 157, 161, 599 A.2d 388 (1991). As a result, he has not preserved this claim for appellate review. Id.

In light of our conclusion that the plaintiff failed to establish the defendant's duty of care, an essential element of his cause of action; see *Samose* v. *Hammer-Passero Norwalk Chiropractic Group, P.C.,* supra; we need not address his claim that the trial court improperly concluded that he did not establish the element of causation.

The judgment is affirmed.

In this opinion the other judges concurred.