SHEILA RODRIGUEZ ET AL. *v.* ANTHONY M. PETRILLI
(12719)

HEIMAN, FREEDMAN and CRETELLA, Js.

Argued March 30—decision released June 28, 1994

*Sanford J. Plepler,* with whom, on the brief, was *Christine M. Murphy,* for the appellants (plaintiffs).

*Craig A. Fontaine,* with whom, on the brief, was *Paul J. Narducci,* for the appellee (defendant).

HEIMAN, J. The plaintiffs[1] appeal from the judgment of the trial court, rendered after the court directed a verdict against them. The plaintiffs assert that the trial court improperly denied their motion to set aside the verdict, which they based on a claim that the court had abused its discretion in excluding the testimony of the plaintiffs' sole expert witness on the issue of the standard of care. We affirm the judgment of the trial court.

The following facts are necessary to our resolution of this appeal. Sheila Rodriguez and her husband, Ronald Rodriguez, commenced this action seeking damages from the defendant for claimed acts of dental malpractice. The plaintiffs alleged that Sheila Rodriguez

---

[1] The plaintiffs are Sheila Rodriguez, who sought damages on the basis of claimed direct acts of malpractice committed against her, and her husband, Ronald Rodriguez, who sought damages based on his incurring medical expenses and other expenses on behalf of his wife and for loss of consortium.

had consulted the defendant in 1985, and, on October 15, 1985, the defendant performed a surgical procedure known as an intraarticular surgery and meniscectomy bilateral with the insertion of a VITEK teflon prosthesis implant. On October 14, 1987, the defendant performed additional surgery on Sheila to remove the prosthesis because of an adverse reaction to the device. Subsequent to the second surgery, Sheila experienced a variety of complications including pain in the neck, head and jaw, an inability to chew, intermittent right temporomandibular joint (TMJ) swelling and other problems. All of these symptoms were reported to the defendant.

In July, 1989, Sheila's difficulties were diagnosed by another dental practitioner as being related to ongoing degenerative changes in both temporomandibular joints and the condylar fossa. In March, 1990, and June, 1992, she underwent reconstructive surgery, including a joint reconstruction.

The plaintiffs' claim is that Sheila's subsequent surgeries and disabilities resulted from the dental malpractice of the defendant in that he failed to diagnose and treat properly conditions that followed her surgery of October 14, 1987. Specifically, the plaintiffs assert that the defendant breached the duty of care owed to Sheila in both his surgical technique and the postoperative care rendered.

On August 6, 1991, the plaintiffs filed a notice of disclosure of an expert witness, pursuant to Practice Book § 220 (D),[2] notifying the defendant of their intention

---

[2] Practice Book § 220 (D) provides in pertinent part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within 60 days from the date the case is claimed to a trial list. Each defendant shall disclose the names of his or her experts in like manner within 120

to call Joseph H. Kronman as an expert witness. In the notice, the plaintiffs indicated that Kronman would testify to the care and treatment afforded to Sheila by the defendant and to the standard of care of a practicing oral surgeon as it related to the care and treatment afforded to Sheila with particular reference to the defendant's postoperative care in October, 1987. The notice also set forth the fact that Kronman's opinion was that the defendant deviated from that standard of care in one or more particular ways.

The notice claimed that Kronman's opinion was based on his review of the medical and dental records provided to him by counsel, and "his experience and expertise in the field of oral and maxillofacial surgery and in particular in the field of TMJ surgery and the implantation and removal of dental prosthesis such as that undertaken in this case. Dr. Kronman also based his opinion on his education and experience in the field of oral and maxillofacial surgery, as set forth in his curriculum vitae attached hereto."

On June 10, 1993, the defendant filed a motion in limine, seeking an order precluding the plaintiffs from "eliciting any expert opinion testimony from Joseph H. Kronman, D.D.S., concerning or relating to the standard of care of oral surgeons or to [the defendant's] alleged deviation therefrom for the reason that Dr. Kronman is not qualified to render any such opinion." After a full evidentiary hearing, the trial court granted the defendant's motion in limine finding that Kronman lacked the necessary qualifications to testify as to the standard of care of oral surgeons because of his lack of experience in the field, either practically or academically.

---

days from the date the case is claimed to a trial list. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection, or if an expert witness who is expected to testify is retained or specially employed after that date, such expert shall not testify except in the discretion of the court for good cause shown."

The plaintiffs sought a mistrial, but that motion was denied by the trial court. The plaintiffs disclosed to the trial court that Kronman was their only witness on the issue of standard of care and thereupon rested. The defendant's motion for a directed verdict was granted and judgment was rendered in his favor. A subsequent motion to set aside the verdict was denied by the trial court and this appeal followed.

The plaintiffs assert that the trial court improperly denied their motion to set aside the verdict because the trial court abused its discretion in excluding the testimony of their sole expert witness on the issue of the standard of care. Thus, the dispositive issue is whether the trial court correctly found that Kronman failed to meet the statutory criteria set forth in General Statutes § 52-184c.[3]

The standard of care required to be established and the qualifications of expert witnesses who may testify

[3] General Statutes § 52-184c provides in pertinent part: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

\* \* \*

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be the result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

to establish that standard, in claims for damages alleged to have been caused by the negligence of a health care provider, are controlled by General Statutes § 52-184c. "Whether a witness is qualified to testify as an expert is a matter that rests in the sound discretion of the trial court." *DiBella* v. *Widlitz,* 207 Conn. 194, 202, 541 A.2d 91 (1988); *Weinstein* v. *Weinstein,* 18 Conn. App. 622, 631, 561 A.2d 443 (1989). We have consistently held that the trial court's exercise of that discretion will not be disturbed unless it has been abused or the error is clear and involves a misconception of the law. *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976); *Churchill* v. *Skjerding,* 31 Conn. App. 247, 249, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993). In the context of this case, we conclude that the trial court did not abuse its discretion in determining that Kronman failed to qualify as an expert witness pursuant to General Statutes § 52-184c (d).

At the evidentiary hearing, the trial court heard testimony from Kronman about his activities in the field of oral and maxillofacial surgery. He testified that he does not function as an oral surgeon, does not consult in oral surgical techniques, nor has he been involved in postsurgical or follow-up care of patients who have undergone dental surgery. He had not been involved in the field of oral surgery, either as a practitioner or as a teacher, for more than thirty years. His area of expertise was in teaching anatomy and in fields other than oral and maxillofacial surgery. On the basis of the record, the trial court found that he lacked the statutorily mandated qualifications to testify as an expert.

We conclude, on the basis of the record, that the trial court did not abuse its discretion in excluding the testimony of Kronman. Here, the trial court found that the witness lacked sufficient training, experience and knowledge from the practice or teaching in a related field of medicine so as to be able to provide such expert

testimony as to the prevailing professional standard of care the field of oral surgery. The trial court found that Kronman was not engaged in a related field of medicine to that of the defendant and that he thus did not meet the minimal standards imposed by General Statutes § 52-184c (d). The finding by the trial court is adequately supported by the record and the exclusion of the testimony on that basis was not an abuse of discretion.

The plaintiffs also assert that the trial court's action in directing a verdict and then failing to set it aside was improper. Again, this claim is premised on their assertion that the trial court acted incorrectly in excluding the testimony of the proffered expert witness. We have already concluded that the trial court acted properly in excluding the testimony of the expert and that it did not abuse its discretion. Thus, in the face of the lack of expert testimony, the trial court properly directed a verdict in favor of the defendant. "A directed verdict, while disfavored, should be ordered whenever a jury could reach no other conclusion without speculation." *Williams* v. *Chameides,* 26 Conn. App. 818, 822, 603 A.2d 1211, cert. denied, 221 Conn. 923, 608 A.2d 689 (1992). In reviewing the action of the trial court in directing and then in refusing to set aside the verdict, we consider the evidence in the light most favorable to the plaintiffs. *Williams* v. *Chameides,* supra, 822; *Samose* v. *Hammer-Passero Norwalk Chiropractic Group, P.C.,* 24 Conn. App. 99, 102, 586 A.2d 614, cert. denied, 218 Conn. 903, 588 A.2d 1079 (1991).

In order for a plaintiff to prevail in an action seeking damages arising out of a claim of medical malpractice, the plaintiff must produce evidence supporting (1) the requisite standard of care, (2) evidence supporting a deviation from that standard, and (3) evidence of a causal relationship between the deviation and the claimed injury. *Williams* v. *Chameides,* supra, 26 Conn.

App. 822; *Hammer* v. *Mount Sinai Hospital,* 25 Conn. App. 702, 717, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991); *Samose* v. *Hammer-Passero Norwalk Chiropractic Group, P.C.,* 24 Conn. App. 102–103. It is necessary for the plaintiff to produce expert testimony to establish both the standard of care to which the defendant is to be held and a breach of that standard. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 130–31, 540 A.2d 666 (1988); *Williams* v. *Chameides,* supra, 823. The plaintiffs failed to produce admissible expert testimony to support their burden of proof and the trial court properly directed a verdict in favor of the defendant and properly refused to set it aside.

The judgment is affirmed.

In this opinion the other judges concurred.