******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL RUFF *v.* YALE-NEW HAVEN
HOSPITAL, INC., ET AL.
(AC 37749)

DiPentima, C. J., and Keller and West, Js.

*Argued October 25, 2016—officially released May 2, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*John Kardaras*, for the appellant (plaintiff).

*Kim E. Rinehart*, with whom, on the brief, was *Erika
L. Amarante*, for the appellee (named defendant).

*Opinion*

WEST, J. In this medical malpractice case, the plaintiff, Michael Ruff, appeals from the trial court's granting of the motion by the defendant Yale-New Haven Hospital, Inc., for a directed verdict and the judgment rendered in favor of the defendant. On appeal, the plaintiff claims, inter alia, that the court erred in: (1) precluding the expert testimony of his sole standard of care witness, Donna Maselli, a registered nurse; and (2) granting the defendant's motion for a directed verdict based on its preclusion of Maselli's testimony.[1] We disagree and affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff was a patient at the defendant hospital for a total right knee replacement surgery on February 4, 2010, performed by Dr. Richard Pelker. In advance of the surgery, and after the plaintiff was given anesthesia, the defendant Dianne Meltzer,[2] a registered nurse and employee of the defendant hospital, inserted a Foley catheter[3] into the plaintiff's bladder to drain his urine during and after the surgery. Pelker then performed the knee replacement surgery, and the catheter remained inserted in the plaintiff's bladder. Meltzer testified in her deposition that she did not meet any resistance when inserting the catheter, and that it was a "successful insertion" because the plaintiff's urine began draining immediately. Meltzer noted that the urine was "light red" with blood, which she testified could indicate that there was some irritation in the urethra from the procedure or that the patient was on medication that could cause bleeding.

On February 8, 2010, the plaintiff was discharged from the hospital to Montowese Rehabilitation Facility in North Haven (Montowese) for rehabilitation of his knee. While there, he was having difficulty urinating and saw blood in his urine. The staff at Montowese changed his catheter and later sent him to the defendant hospital, where hospital staff "inserted about . . . three or four catheters." He returned to Montowese, and around February 16, 2010, his catheter was removed. By February 18, 2010, the plaintiff was not having trouble urinating and did not have blood in his urine. On March 14, 2010, however, the plaintiff was sent to the emergency room of the Hospital of Saint Raphael because he was unable to urinate. The emergency room nursing staff was unable to place a catheter, so the on-call urologist, Dr. Joseph Camilleri, treated him. Because of a stricture in the plaintiff's urethra, Camilleri had to dilate the plaintiff's urethra in order to insert a catheter to drain his urine. This procedure did not result in any blood in the plaintiff's urine. Camilleri thereafter became the plaintiff's urologist and was still his treating urologist at the time of trial.

Before becoming a patient of Camilleri's, the plaintiff

had been treated by other urologists for a long history of urological problems, including the inability to urinate, erectile dysfunction, and blood in his urine. The plaintiff testified that he had been catheterized "many times" during different surgical procedures prior to his knee replacement surgery and, after one such surgical procedure, he experienced difficulty urinating for "two to three months" and had to self-catheterize at home. In the 1980s, he was admitted to the hospital many times for the inability to urinate, was treated at a urology clinic, and was under the ongoing care of a urologist. In the 1990s, he was treated by his urologist for an enlarged prostate. In 1998, he was treated by his urologist for erectile dysfunction. In 2003, he was treated by his urologist because he was having difficulty urinating and also was experiencing "urine running down [his] leg." In 2004, he had a heart procedure, during which a Foley catheter was inserted into his bladder, which led to him having "dark, red urine with blood clots." At the time of his knee surgery, on February 4, 2010, the defendant was taking "twenty-five or so medications a day" for his various health conditions, including blood thinners and medication to treat his enlarged prostate.

The plaintiff commenced this medical malpractice action on January 10, 2011, claiming that Meltzer negligently had inserted the Foley catheter on February 4, 2010, puncturing his prostate. He alleged that the defendant "through its agents, servant, employee and/or independent contractors under their control in treating and caring for the plaintiff . . . failed to exercise a degree of care, skill and diligence ordinarily exercised by hospitals engaged in the specialty of treating patients in the community with the need for surgery" and put forth a number of further allegations in support of that contention.[4] He sought damages on the basis of his allegation that he sustained injuries from the catheter insertion and had to undergo additional testing, and medical and surgical procedures; had to take additional medication; had "extensive scarring, pain and suffering"; had lost the ability to ejaculate; had incurred additional medical expenses; and "[had] been deprived of his ability to carry out life's normal activities, recreation, social activities, and sexual activities."

Prior to trial, the plaintiff disclosed to the defendant that registered nurse Maselli would testify as his sole standard of care expert. The defendant deposed Maselli on December 13, 2013, and she testified that since 1995, she had worked as a nurse consultant for the Department of Public Health (department). Her responsibilities in this position consisted of developing statewide health programs, writing guidelines and protocols for statewide programs, doing trainings and on-site visits, contract management, and grant writing and monitoring. She further testified that through her work with the department, she did not treat patients. She conceded that none of her work at the department involved clini-

cal care nursing, which she had not done since 1995, when she was a nursing supervisor at a convalescent home.

She also testified in her deposition that in addition to her job with the department, she was the chief executive officer, and sole employee, of Apex Medical Legal Consulting (Apex). Through her work at Apex, she reviewed medical records, and provided summaries, translation, and interpretation of those records. She did not testify, however, that she provided nursing services through her work with Apex. Maselli further testified that she also worked as an independent private duty nurse, and estimated that she worked an average of twenty hours per week in that capacity. She testified that she usually provided these services for family and friends and often did not charge for her services. In this capacity, she did not "do medications or treatments, the hospital staff [did] that" but provided "basic nursing care, fluids, ambulating, assessing, [and] deep breathing." She did not testify, however, that she provided any of these services under the direction of a licensed physician or advanced practice registered nurse. She also testified that she did not routinely place Foley catheters in her work, and, in fact, the last time she had placed a Foley catheter was in the 1980s, when she last worked in a hospital.

Prior to the start of trial, the defendant filed a motion in limine to preclude Maselli from testifying at trial on the grounds that she was not qualified as a "similar health care provider" to Meltzer, a clinical care nurse, pursuant to General Statutes § 52-184c (b)[5] and, therefore, she was "not qualified to offer opinions related to the standard of care applicable to a registered nurse inserting a Foley catheter on February 4, 2010."[6] In support of this contention, the defendant argued that Maselli's testimony should be precluded because she was a nonspecialist, and, therefore, was subject to the five year provision of § 52-184c (b), which she could not satisfy because she lacked "active involvement in the practice or teaching of [nursing] within the five year period before" the plaintiff's knee surgery. The defendant further argued that Maselli did not qualify as an expert witness under the catch-all provision of § 52-184c (d)[7] because the same five year rule applied.

The court orally granted the defendant's motion on February 20, 2015, after the trial had started, and precluded Maselli's testimony pursuant to § 52-184c (b) and (d). In so doing, the court cited Maselli's deposition testimony regarding her employment history and stated: "The court concludes that pursuant to [§ 52-184c (b) (2)] Maselli lacks active involvement in the practice or teaching of nursing within the five year period before February [4], 2010." It went on to state: "Since the court has concluded that Maselli is not a similar health care provider under subsection (b), the court must deter-

mine whether under [subsection] (d) she possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of nursing so as to be able to provide such expert testimony as to the prevailing standard of care in a given field of nursing. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of nursing within the five year period before the incident giving rise to the claim. Again, the court concludes based upon a careful review of Maselli's deposition testimony regarding her qualifications, that she lacks the required active involvement in the [practice] or teaching of nursing within the five year period before the incident giving rise to the claim. Accordingly, her testimony is also precluded under § 52-184c (d)."

Additionally, the court issued a written memorandum of decision on February 24, 2015, and reiterated its granting of the defendant's motion to preclude Maselli's testimony. In so doing, the court stated: "In her deposition testimony, Maselli conceded that none of her work at [the department] involves clinical nursing care. The last time Maselli's job involved clinical patient care was in 1995, when she was a nursing supervisor at a convalescent home. In addition, Maselli has not worked in a hospital setting since the 1980s. Maselli testified that the last time she placed a Foley catheter was 'when I was working in the hospital, probably in—in—probably in the '80s, at some point.' . . . Maselli also testified that she provides independent private duty nursing services to family and friends, but she admitted that this work does not include the insertion of Foley catheters. Although there was some testimony from Maselli that she works private duty twenty hours per week, she later testified that her hours varied and that she worked twenty-four hours in the month of October, 2014. In addition, there is no indication that her private duty work included the insertion of Foley catheters."

After the court precluded Maselli's testimony, the plaintiff rested. The defendant moved for a directed verdict "based on the [plaintiff's] inability to meet any of the elements of a medical malpractice case." The court granted the motion and directed a verdict in favor of the defendant, stating: "Based on the court's ruling . . . with respect to . . . Maselli as the standard of care expert which is . . . a required element and precluding her testimony, the court will grant the directed verdict."[8] This appeal followed.

I

The plaintiff first claims that the court erred in precluding Maselli's testimony. Specifically, the plaintiff claims that Maselli's testimony satisfied the statutory criteria for expert testimony regarding the standard of care in a medical malpractice action, and, therefore, she should have been allowed to testify as an expert witness. In support of this contention, he argues that

"a registered nurse working in a Hospital operating room is no different [than] a registered nurse doing home care or working for [the department], as Nurse Maselli has done for twenty (20) years." He further argues that "the act of catheterization is within the scope of duties of a registered nurse, [and] all that should be required of expert testimony as to the proper insertion of a catheter is that they are a licensed, registered nurse, that they have practiced nursing within the previous five (5) years." The plaintiff argues that by deciding the way it did, the court, in effect, has "created a subclassification of nurses not contemplated by the legislature [or] the appropriate licensure authorities." In turn, the defendant argues that the court's preclusion of Maselli's testimony was proper because she was not a similar health care provider pursuant to § 52-184c.[9] We agree with the defendant.

We first set forth our standard of review and the applicable legal principles, relevant to this claim. "The decision to preclude a party from introducing expert testimony is within the discretion of the trial court. . . . On appeal, that decision is subject only to the test of abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 451, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998). "[T]he testimony of an expert witness is necessary to establish both the standard of proper professional skill or care . . . and that the defendant failed to conform to that standard of care." (Citation omitted; internal quotation marks omitted.) *Campbell* v. *Palmer*, 20 Conn. App. 544, 548, 568 A.2d 1064 (1990). "In order to render an expert opinion, the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 20, 961 A.2d 1016 (2009). "The standard of care required to be established and the qualifications of expert witnesses who may testify to establish that standard, in claims for damages alleged to have been caused by the negligence of a health care provider, are controlled by . . . § 52-184c. Whether a witness is qualified to testify as an expert is a matter that rests in the sound discretion of the trial court. . . . We have consistently held that the trial court's exercise of that discretion will not be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *Petrilli*, 34 Conn. App. 871, 875–76, 644 A.2d 381 (1994).

"[T]he test for admissibility of expert testimony involves, inter alia, a determination as to whether the witness has a special skill or knowledge directly applicable to a *matter in issue* . . . ." (Emphasis in original; internal quotation marks omitted.) *Sherman* v. *Bristol Hospital, Inc.*, 79 Conn. App. 78, 85, 828 A.2d 1260 (2003); see also *Hayes* v. *Decker*, 263 Conn. 677, 683, 822

A.2d 228 (2003) ("[e]xpert testimony should be admitted when: [1] the witness has a special skill or knowledge directly applicable to a matter in issue, [2] that skill or knowledge is not common to the average person, and [3] the testimony would be helpful to the court or jury in considering the issues" [internal quotation marks omitted]); *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 227 (1973) ("Generally, expert testimony may be admitted if the witness has a special skill or knowledge, beyond the ken of the average juror, that, as properly applied, would be helpful to the determination of an ultimate issue. . . . The special skill or knowledge, however, must be directly applicable to the matter specifically in issue." [Citation omitted.]).

Additionally, in medical malpractice cases specifically, "[a] trial court evaluating a prospective expert's qualifications to testify in a medical malpractice action must either decide that the expert is either a similar health care provider as defined by subsections (b) or (c) of § 52-184c, *or* make a discretionary determination [pursuant to § 52-184c (d)] that, to the satisfaction of the court, [the expert] possesses sufficient training, experience and knowledge as a result of the practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." (Emphasis in original; internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 15, 12 A.3d 865 (2011).

"Section 52-184c sets forth four distinct, yet closely intertwined subsections. Section 52-184c (a) requires the plaintiff to prove, by a preponderance of the evidence, that the defendant breached the 'prevailing professional standard of care for that health care provider. . . .' That subsection then defines the 'prevailing professional standard of care for a given health care provider [as] that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent *similar health care providers.*' " (Emphasis in original; footnote omitted.) *Grondin* v. *Curi*, 262 Conn. 637, 650, 817 A.2d 61 (2003). "To testify as an expert, the health care provider must qualify as a similar health care provider under subsection (b) or (c), or, if he is not a similar health care provider, must satisfy the court under subsection (d) that he has sufficient training, practice, and knowledge including practice or teaching within the five-year period to qualify." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 95, 828 A.2d 31 (2003).

The statute defines "similar health care provider" in two ways, depending on whether the defendant health care provider is a specialist or a nonspecialist. For specialists, a similar health care provider is defined by § 52-184c (c)[10] as someone who "(1) is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty." For nonspecialists, a similar health care provider is defined by § 52-184c (b) as someone who "(1) is licensed by the appropriate regulatory agency of this state . . . and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." Section 52-184c (d) provides a "catch all" provision for experts who do not qualify as a "similar health care provider" under subsection (b) or (c). Under subsection (d) (2), a health care provider may testify if she "possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the *active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.*" (Emphasis added.) General Statutes § 52-184c (d) (2).

The court here analyzed Maselli's qualifications to testify under the nonspecialist standard pursuant to § 52-184c (b). Absent evidence of specialized training, registered nurses are considered nonspecialists under § 52-184c (b). *Bell* v. *Hospital of Saint Raphael*, 133 Conn. App. 548, 560, 36 A.3d 297 (2012) (registered nurse with bachelor of science in nursing treated as nonspecialist under § 52-184c [b]; because opinion letter did not represent that the nurse "had been trained and experienced in any specialty or had been certified by an American board as a specialist," she did not qualify as specialist pursuant to § 52-184c [c]). Here, there is no evidence of, nor does the plaintiff argue, that Maselli should be considered a specialist for purposes of § 52-184c (c),[11] nor is there any evidence that Meltzer was considered a specialist. Therefore, for purposes of being a "similar health care provider" to Meltzer, Maselli is considered a nonspecialist, and her qualifications to testify are analyzed under § 52-184c (b). There is no dispute that Maselli satisfies the first prong of the nonspecialist test, that she is "licensed by the appropriate regulatory agency of this state." The issue, therefore, is whether she was "trained and experienced in the same discipline or school of practice" as Meltzer, and whether such training and experience was "as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident

giving rise to the claim." General Statutes § 52-184c (b) (2).

The court determined that Maselli was not a similar health care provider pursuant to § 52-184c (b) (2) not because she was not trained or experienced in the same discipline or school of practice, but because she lacked "active involvement in the practice or teaching or [nursing] within the five-year period before [February 4, 2010]." In so doing, it highlighted the facts from Maselli's deposition testimony that she was not involved with "clinical care nursing," had not provided "clinical patient care" since 1995, had not worked in a hospital since the 1980s, and had not placed a Foley catheter since her time working in the hospital. The court also highlighted as instructive the fact that Maselli's testimony was precluded in a previous case because the court in that case, *S. Richards, J.*, found that her employment as an "independent medical-legal nurse consultant" and "private duty nurse" did not qualify her to testify as a similar health care provider to a practicing nurse employed by a hospital. See *Patenaude* v. *Norwalk Hospital*, Superior Court, judicial district of Fairfield, Docket No. CV-11-6022949-S (September 12, 2012). The court in the present case went on to state: "[A]fter carefully reviewing Maselli's deposition testimony regarding her qualifications, the court concludes that she does not qualify as a similar health care provider under § 52-184c (b) to offer expert opinions on the standard of care for a registered nurse inserting a preoperative Foley catheter in February 2010."

Since the court determined that Maselli did not satisfy the requirements of being a "similar health care provider" pursuant to § 52-184c (b), it then turned to the residual provision of § 52-184c, subsection (d), to determine whether Maselli was qualified to testify as an expert pursuant to that section. The court, in its written memorandum of decision, stated: "Since the court has concluded that Maselli is not a similar health care provider under subsection (b), the court must determine whether under (d) she 'possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of [nursing] so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of [nursing]. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of [nursing] within the five-year period before the incident giving rise to the claim.' Again, the court concludes that based upon a careful review of Maselli's deposition testimony regarding her qualifications, that she lacks the required active involvement in the practicing or teaching of nursing within the five year period before the incident giving rise to the claim. Accordingly, her testimony is also precluded under § 52-184c (d)."

We conclude that it was not an abuse of discretion

for the trial court to find that Maselli's deposition testimony did not support a determination that she was a "similar health care provider" to Meltzer pursuant to § 52-184c (b), nor that she was qualified to testify under the residual provision of § 52-184c (d). Though Meltzer and Maselli both were trained as registered nurses, Maselli was no longer involved with the type of "clinical care nursing" that Meltzer practiced in the hospital setting, and Maselli had not done so for far more than the five years prior to February 4, 2010. Additionally, while we note that Maselli testified that she had been providing some private duty nursing during the five years prior to February 4, 2010, she testified that she provided only "basic nursing care, fluids, ambulating, assessing, [and] deep breathing," but did not "do medications or treatments" because "the hospital staff [did] that," nor did she place preoperative Foley catheters. Additionally, we note that Maselli never testified that she provided any of this private duty nursing care under the "direction of a licensed physician . . . or advanced practice registered nurse" which is required by the definition of "the practice of nursing by a registered nurse," pursuant to General Statutes § 20-87a (a).[12]

After a careful review of the record, none of Maselli's training and experience seems to suggest that she was actively involved in the practice or teaching of nursing in the five year period prior to February 4, 2010. Therefore, the trial court did not abuse its discretion in determining that she did not satisfy the qualifications to be considered a "similar health care provider" for nonspecialists, pursuant to § 52-184c (b), nor does she satisfy the requirements of the residual provision, pursuant to § 52-184c (d).

We conclude, on the basis of the record, that the trial court did not abuse its discretion in precluding Maselli's testimony. This finding by the trial court, that Maselli did not fit the statutory requirements to testify as an expert witness and, therefore, was not qualified to provide expert testimony, is supported adequately by the record and, in light of the foregoing, the exclusion of Maselli's testimony on that basis was not an abuse of discretion.

II

The plaintiff also claims that the court erred in granting the defendant's motion for a directed verdict because its decision was based on the erroneous preclusion of Maselli's testimony. We disagree.

"We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.)

*Silano* v. *Cumberland Farms, Inc.*, 85 Conn. App. 450, 453, 857 A.3d 439 (2004).

In order to prevail in a medical malpractice action, "the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 656, 904 A.2d 149 (2006). "[E]xpert testimony is required to establish the standard of professional care to which the defendant is held . . . ." *Mather* v. *Griffin Hospital*, 207 Conn. 125, 131, 540 A.2d 666 (1988). "A court should direct a verdict if, on the evidence, the jury reasonably and legally could not have reached any other conclusion. . . . A directed verdict is justified if the plaintiff fails to present any evidence as to a necessary element of his or her cause of action." (Citation omitted.) *Poulin* v. *Yasner*, 64 Conn. App. 730, 734–35, 781 A.2d 422, cert. denied, 258 Conn. 911, 782 A.2d 1245 (2001).

We conclude that the court properly precluded the plaintiff's sole standard of care expert witness, Maselli, from testifying. Accordingly, the granting of the defendant's motion for a directed verdict was proper.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff brought three other claims on appeal. He argues that the court erred in: (1) failing to order sua sponte that his complaint be amended in light of a new scheduling order; (2) precluding the causation testimony of expert witness Dr. Joseph Camilleri, a urologist who treated the plaintiff six weeks after his knee surgery; and (3) denying the plaintiff's motion to limit the testimony of Dr. Richard Pelker, the surgeon who performed the plaintiff's knee surgery. Because we affirm the court's granting of the defendant's motion for a directed verdict based on the plaintiff's lack of standard of care expert testimony, we need not address these claims.

[2] The plaintiff originally brought this action against the defendant hospital and Meltzer as codefendants but he later withdrew count two against Meltzer. Hereafter, we refer in this opinion to Yale-New Haven Hospital, Inc., as the defendant.

[3] A Foley catheter is a flexible tube that is inserted into the tip of the penis, through the urethra and into the bladder in order to drain urine.

[4] The plaintiff also alleged that the defendant: "[F]ailed to hire or retain appropriately trained Registered Nurses"; "failed to adequately supervise their Registered Nurses"; "appointed and/or hired Registered Nurses not qualified, experienced and/or with the background to insert a Foley catheter as part of preoperative care plan"; "failed [by and through its agents, servants and/or employees] to follow nursing protocol for insertion of a Foley catheter"; "failed [by and through its employees] to order and/or request a urology consult in the perioperative period"; "failed [by and through its employees] to request assistance from other RNs, APRNs, Residents, and/or physicians to insert the Foley catheter upon encountering resistance"; "failed to adequately require certification and recertification to perform Foley catheterizations"; "failed to have adequate staffing of supervisors, APRNs, residents, or attending physicians"; and "failed to install or maintain a chain of command protocol adequate to assist [Meltzer] in the event of complications in the insertion of a Foley catheter."

[5] General Statutes § 52-184c (b) provides: "If the defendant health care provider is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained

and experienced in the same discipline or school of practice and such training and experience shall be a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[6] The defendant moved to preclude Maselli's testimony on the alternative ground that her testimony was "speculative, without factual basis, and inadmissible under § 7-4 (a) of the Code of Evidence and *State* v. *Porter*, 241 Conn. 57, [698 A.2d 739] (1997)." The court precluded her testimony on the grounds that she was not a similar health care provider and, therefore, did not address this argument.

[7] General Statutes § 52-184c (d) provides: "Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[8] The court granted the defendant's motion for a directed verdict based on the preclusion of both of the plaintiff's expert witnesses, Camilleri and Maselli. Because Maselli was the only witness disclosed to testify on the element of standard of care, her preclusion was dispositive.

[9] The defendant argues that even if Maselli had qualified as a similar health care provider, her testimony still should have been precluded because it lacked factual foundation, and was speculative and unreliable pursuant to *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997). Because we find that the court did not abuse its discretion in precluding Maselli's testimony pursuant to § 52-184c, we need not reach this alternative claim.

[10] General Statutes § 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider.' "

[11] Maselli testified in her deposition that she was not an expert in urology, and that she did not have any specialized training or certifications in urology.

[12] General Statutes § 20-87a (a) provides: "The practice of nursing by a registered nurse is defined as the process of diagnosing human responses to actual or potential health problems, providing supporting and restorative care, health counseling and teaching, case finding and referral, collaborating in the implementation of the total health care regimen, and executing the medical regiment *under the direction of a licensed physical, dentist or advanced practice registered nurse*. A registered nurse may also execute orders issued by licensed physician assistants, podiatrists and optometrists, provided such orders do not exceed the nurse's or the ordering practitioner's scope of practice. A registered nurse may execute dietary orders written in a patient's chart by a certified dietitian-nutritionist." (Emphasis added.)