## Warren Campbell *v.* Walter Palmer et al.
### (7828)

Borden, Foti and Lavery, Js.

Argued November 1, 1989—decision released January 23, 1990

*Michael E. Wolf,* with whom, on the brief, was *Mark R. Leder,* for the appellant (plaintiff).

*David S. Williams,* with whom, on the brief, were *Wayne G. Tillinghast* and *Jeffrey R. Godley,* for the appellee (defendant John A. Tighe).

Lavery, J. This is a medical malpractice action brought by the plaintiff against the defendant physicians for failing to diagnose rectal cancer. The trial court granted the defendant's motion for summary judgment filed by the defendant radiologist, John A. Tighe, finding that the plaintiff's expert never stated, either in his deposition or his affidavit, that the defendant was guilty of malpractice or that he deviated from the applicable standard of care. The plaintiff's appeal followed.

The plaintiff claims that the trial court erred (1) in granting Tighe's motion for summary judgment, (2) in concluding that the plaintiff's expert did not raise a factual question as to Tighe's deviation from the standard of care, (3) in ruling that Tighe would suffer undue prejudice if the plaintiff were allowed to proceed to trial or redepose the plaintiff's expert, (4) in failing to view the evidence in the light most favorable to the nonmoving party, and (5) by abusing its discretion in determining that there was no factual issue as to the plaintiff's expert opinion. We agree with the plaintiff that his expert did raise a genuine issue of fact as to the standard of care and Tighe's deviation from it and, therefore, find error.

The documentation submitted in connection with Tighe's motion for summary judgment included the deposition of the plaintiff's expert, R. Harlow Hermanson, a radiologist, a letter of opinion from Hermanson dated June 15, 1987, and a sworn statement from Hermanson in the form of a letter to the plaintiff, dated December 15, 1989, explaining the answers in his deposition.

The following facts are relevant. In April, 1985, the plaintiff was referred to Tighe for a barium enema procedure. Tighe's report to the referring physician did not indicate that any growths or lesions were discovered. In January, 1986, the plaintiff, after a three week period of rectal bleeding, went to another physician, who performed a sigmoidoscopy procedure, which revealed that the plaintiff had a large hemorrhagic malignant mass in the area of his rectum.

The plaintiff brought this medical malpractice action against the defendants for failure to diagnose the rectal cancer. After a series of discovery motions by Tighe, the trial court granted his motion in limine precluding

the plaintiff from relying on testimony of any expert witness other than Hermanson on the standard of care.

Hermanson's initial report[1] found that Tighe's barium enema procedure was inadequate to exclude pathology and that the procedure should have been repeated and a sigmoidoscopy suggested to the patient. In September, 1988, Tighe deposed Hermanson. Tighe asked Hermanson whether Tighe had committed medical malpractice. Hermanson did not respond in the affirmative but he did testify that Tighe's procedure was not the way he would have done it and "not the way most of the people [he knew] would have acted." He testified that it was his opinion that the examination as a whole was inadequate. He also testified to the additional steps that a radiologist of adequate competency would have taken, namely, a repeat examination and a sigmoidoscopy or colonoscopy.

After the deposition, Tighe moved for summary judgment on the ground that no genuine issue of fact existed between the parties because the plaintiff did not present an expert that would testify that Tighe's conduct deviated from the standard of care. The plaintiff filed Hermanson's letter of December 15, 1988, which flatly states: "My testimony in response to that and subse-

---

[1] The following are excerpts from Hermanson's opinion letter of June 15, 1987. "Review of the examination of April 18, 1985: Only 5 films are available for review, 3 overhead 14 x 17 films and 2 spot films. The examination is of technically poor quality because of a large amount of extraneous material in the bowel, and because the amount of films is inadequate. Moreover I feel that this was done as a single contrast study, following which air was injected after evacuation of the bowel. No definite lesion is shown, but one of the spot films shows slight irregularity of the rectosigmoid region, probably on the left anterolateral wall. . . .

"In my opinion, the examination of April 18, 1985, was inadequate to exclude pathology, and should have been repeated or sigmoidoscopy should have been suggested. It appears probable that adequate examination would have disclosed this lesion."

quent questions . . . clearly shows the ways in which, in my opinion, Dr. Tighe deviated from the Standard of Care."

The trial court granted Tighe's motion for summary judgment, stating, "Hermanson never testified, either in his deposition or his affidavit, that [Tighe] was guilty of malpractice or deviated from the applicable standard of care. His testimony, therefore, does not provide the basis for the necessary expert opinion on the issues of the applicable standard of care and whether [Tighe's] conduct deviated from it. Since his is the only expert testimony on liability, the plaintiff cannot make out a *prima facie* case."

" 'A trial court may appropriately grant a motion for summary judgment only when the affidavits and evidence submitted in support of the motion demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Catz* v. *Rubenstein,* 201 Conn. 39, 48–49, 513 A.2d 98 (1986); *Barnes* v. *Schlein,* 192 Conn. 732, 738, 473 A.2d 1221 (1984). Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact, a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. *Strada* v. *Connecticut Newspapers, Inc.,* 193 Conn. 313, 317, 477 A.2d 1005 (1984). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.' *Rotophone, Inc.* v. *Danbury Hospital,* 13 Conn. App. 230, 232–33, 535 A.2d 830 (1988)." *Maruca* v. *Standard,* 19 Conn. App. 16, 19, 559 A.2d 1167 (1989).

A physician is required by law to exercise the degree of skill, care and diligence that is customarily demonstrated by physicians in the same line of practice. *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 300–302, 465 A.2d 294 (1983). The physician must exercise such reasonable skill and diligence in all aspects of providing care and treatment to a patient. *Allen* v. *Guiliano,* 144 Conn. 573, 574, 135 A.2d 904 (1957). Whether a physician's conduct was sufficient to meet the appropriate standard of care or whether such conduct was unskillful presents questions of fact for a jury to decide.

To prove that a physician has breached the legally required standard of care, the plaintiff must offer some evidence that the conduct of the physician was negligent. *Snyder* v. *Pantaleo,* 143 Conn. 290, 295; 122 A.2d 21 (1956). Except in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of want of care; *Puro* v. *Henry,* 188 Conn. 301, 305, 449 A.2d 176 (1982); the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician; *Shelnitz* v. *Greenberg,* 200 Conn. 58, 66, 509 A.2d 1023 (1986); "and that the defendant failed to conform to that standard of care." *Mather* v. *Griffin Hospital,* 207 Conn. 125, 131, 540 A.2d 666 (1988); *Snyder* v. *Pantaleo,* supra.

It is not necessary, however, for the expert witness specifically to label a defendant's conduct as malpractice in order for the jury to reach the conclusion that the defendant was negligent. *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153 (1927) ("to demand a positive condemnation of the operator's course as a prerequisite to recovery would in such case be prohibiting of any recovery therein"); see *Allen* v. *Giuliano,* supra, 574–75; *Snyder* v. *Pantaleo,* supra, 295. In medical malpractice cases, it is proper for the trier of fact to draw

inferences and reach conclusions from facts that are found to be proved. See 1 B. Holden & J. Daly, Connecticut Evidence § 64 (a) through (d). Proof by circumstantial evidence is sufficient where rational minds could reasonably and logically draw the inference. *Console* v. *Nickou,* 156 Conn. 268, 275, 240 A.2d 895 (1968).

In this case, the trial court based its decision to grant summary judgment on its finding that Hermanson did not state, either in his deposition or his affidavit, that Tighe was guilty of malpractice or deviated from the applicable standard of care. This decision erroneously applied the relevant law.

A review of the transcript and affidavit shows that the witness did not testify that Tighe was guilty of malpractice.[2] The transcript reveals, however, that he did sufficiently testify to a breach of the standard of care in the deposition, and he further clarified his testimony in the affidavit.[3] In his deposition, Hermanson testified that he thought the April 18, 1985 examination was inadequate and that a radiologist of adequate compe-

[2] During Hermanson's deposition the following relevant colloquy occurred:

"Q. I understand you would do that, but are you telling me that a doctor who did not add that last part would be committing malpractice?

"A. No. I'm not telling you that at all.

"Q. In other words, some physicians would do it one way; you would prefer to do it the way you just mentioned?

"A. That's correct."

[3] Hermanson's affidavit states as follows: "In reviewing the transcript of my deposition on this case, I note certain answers which require clarification. I was asked . . . if I had an opinion as to whether Dr. Tighe deviated from or failed to meet a standard of care in the field of radiology. My testimony in response to that and subsequent questions . . . clearly shows the ways in which, in my opinion, Dr. Tighe deviated from that standard.

"I was asked . . . if indeed these were the only views that Dr. Tighe took, would it be my opinion that he committed malpractice because he did not take the other views? I said that I could not answer because I did not know if he fluoroscoped the patient or not. Actually, since there were spot films taken, we know that fluoroscopy was done. In fact, I pointed out . . . a suspicious area on the spot film that warranted further investigation and was in the very location where the tumor was subsequently demonstrated.

tency should repeat the examination to get an adequate examination and then should recommend a sigmoidoscopy or colonoscopy in addition. He further testified that the examination as a whole was inadequate and was performed using a technique that "I think is not the way I'd like to do it; not the way most of the people I know do it."[4] He went on to describe the technique that he and most of his professional colleagues would use. In his December 15 affidavit; see footnote 3, supra; Her-

---

I am certain that the tumor was present at the time of the barium enema performed by Dr. Tighe and that it was about two centimeters in diameter.

"I testified . . . that if I had done that examination, and those were the films that I saw in the office, I would either have done it (repeated the barium enema) myself or suggested it to the referring physician.

"I was asked . . . if I had said that if a radiologist in that position did not suggest that, I wouldn't say that that was malpractice, that there are some out there who would and some who wouldn't. I answered, 'That's right.' Malpractice is a legal term whose meaning, as I understand it, goes beyond the issue of standard of care. I was speaking only of the standard of care.

"I was asked . . . if the average competent radiologist would have been satisfied with the barium enema films. I answered that I wasn't satisfied with them. I declined to speak for the 'average competent radiologist' because I cannot speak for another. I do, however, speak about the standard of care."

[4] Hermanson's deposition states in pertinent part:

"Q. If I can go back to my original question. Am I to understand you correctly that there's nothing inadequate with the x-ray which was marked Exhibit No. 3. However, when you talk of inadequacy, you're talking about—

"A. The examination as a whole.

"Q. Are you through with Exhibit 3 which was the oblique view?

"A. Not entirely, because there are areas of the bowel here that we don't see completely, and this was done by a technique that I think is not the—certainly not the way I'd like to do it; not the way most of the people I know do it. We do a primary double contrast examination as opposed to this which is starting out—which starts out as a single contrast examination.

"Moreover, somewhere mention was made of this being inadequate to exclude polyps, and it certainly is inadequate to exclude polyps. They could be there. You couldn't see them. You wouldn't have the faintest idea.

"Q. He would have fulfilled his duty in telling that to the referring physician, would he not?

"A. I'd have to say yes and no.

"Q. What's the not part?

"A. The no part is I would advise re-examination."

manson stated that Tighe deviated from the standard of care. He further stated that the tumor was present at the time of Tighe's examination of the plaintiff. This testimony was sufficient under the principles articulated in *Allen* v. *Guiliano,* supra, *Snyder* v. *Pantaleo,* supra, and *Simlak* v. *Foster,* supra.

In this case, the witness testified to the standard of care and to what he and his professional colleagues would have done under the circumstances of this case. There was sufficient testimony given by Hermanson in his letter, deposition, and affidavit to present a question for the trier of the fact as to the standard of care and Tighe's deviation from it.

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.