[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT BY DEFENDANT MARK IZARD
The plaintiffs instituted this action against the defendants Hartford Hospital, Barbara Dowd, a nurse who worked in the Dialysis Unit of Hartford Hospital, and Mark Izard CT Page 2666 d/b/a Hartford Dialysis, the medical director of the Hartford Hospital Dialysis Unit, for malpractice and other causes of action based on the death of the plaintiff's decedent, Czeslaw Szymanski, which allegedly occurred in the course of the decedent's hemodialysis treatment at Hartford Hospital. The complaint alleges that during the hemodialysis treatment the decedent was left unattended and the venus and/or arterial needles connecting him to the kidney dialysis machine became dislodged, causing him to bleed to death.
The Sixth Count of the complaint alleges that the decedent's death was due to the reckless or wanton misconduct of Mark Izard contrary to the prevailing standard of medical care in various aspects, including the following: The defendant Izard did not provide adequate medical administration, supervision, and management for hemodialysis procedures and did not take adequate disciplinary action against his hemodialysis personnel when he knew, or should have known, that they were not providing hemodialysis treatment in accordance with the prevailing standard of medical care and when he knew or should have known that the aforementioned failures could likely result in serious physical injury or death to patients such as the decedent.
The defendant Izard has moved for summary judgment on the Sixth Count on the grounds that the plaintiff has no expert who will testify that the treatment fell so far below the standard of care as to constitute a reckless disregard of human life.
In opposition to the motion for summary judgment the plaintiffs have presented the deposition testimony of Dr. Emile Paganini, Medical Director of the dialysis unit of The Cleveland Clinic Foundation, and recognized even by Izard a leading dialysis expert. Dr. Paganini has testified that Izard breached the standard of care for a medical director in failing to insure constant surveillance of patients during hemodialysis treatment. Dr. Paganini further testified that if Izard failed to discipline a nurse where there had been a substantial blood loss during hemodialysis while she was out of the room, this would be a violation of the standard of care.
The plaintiff has also introduced the following competent evident: prior to the decedent's death Izard CT Page 2667 knew that there were times that patients were not provided with constant surveillance during hemodialysis treatment; Izard was aware that there was insufficient nursing staff at the dialysis unit to permit constant surveillance of patients; Izard knew about at least three incidents where patients suffered significant blood losses, including one incident involving one of Barbara Dowd's patients, which occurred while Dowd left the patient unattended during hemodialysis treatment; Izard never took any disciplinary actions against Dowd or other nurses involved in the blood loss incidents which preceded decedent's death, nor did he take any action to correct the practices which led to patient blood loss.
The defendant argues that the expert opinion of Dr. Paganini described above might be sufficient to establish a cause of action against the defendant for negligence, but is legally insufficient to constitute the expert testimony which is required to prove that the defendant's conduct was reckless or wanton. The defendant claims, therefore, to be entitled to summary judgment as a matter of law on the Sixth Count.
In a medical malpractice case the plaintiff must prove the requisit standard of care for treatment, a deviation from that standard of care and a causal connection between the deviation and the claimed injury.
Samose v. Hammer-Passero Norwalk Chiropractic Group, P.C.,24 Conn. App. 99, 102-103, 586 A.2d 614 (1991). Except in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of negligence; Puro v. Henry, 188 Conn. 301, 305, 449 A.2d 176 (1982), positive evidence of an expert nature is necessary to establish both the standard of care, Selnitz v. Greenberg, 200 Conn. 58, 66,509 A.2d 1023 (1986); and that the defendant's conduct deviated from that standard of care, Mather v. Griffin Hospital, 207 Conn. 125, 131, 540 A.2d 666 (1988). This is because in most cases a layman does not have the requisite knowledge as to whether proper treatment was given or care used. Selnitz v. Greenberg, supra.
Neither party has presented any authority from this jurisdiction which specifically addresses the question of whether expert testimony is needed to establish that a physician's violation of the standard of care was reckless or CT Page 2668 wanton.
The defendant relies on the case of Tatum v. Gigliotti, 80 Md. App. 559, 565 A.2d 354 (1989). In that case the plaintiff sought to recover from the defendant paramedic for the wrongful death of her decedent. The court held that the paramedic's conduct fell within the province of the Maryland "Good Samaritan" Statute, Article 43, 132 of the Annotated Code of Maryland, which provided that a paramedic was not liable for any civil damages as the result of any professional act or omission not amounting to gross negligence. The case was tried to a jury and ended in a mistrial after the jury was unable to reach a verdict. The trial court then directed a verdict in favor of the defendant. The basis of the directed verdict was the insufficiency of evidence as to gross negligence. In affirming the decision of the trial court, the appeals court held that upon review of the entire record, the defendant's conduct did not rise to the level of gross negligence. The court stated, "In fact, appellant's own expert witness, . . ., on standard of care failed to testify that any of defendant's actions constituted a `reckless disregard for human life.'" 565 A.2d at 358. That the Tatum court reviewed all evidence of recklessness, not only expert testimony, in affirming the trial court's ruling, indicates that the court did not consider expert testimony as to recklessness to be legally essential. Moreover, the court provided no rationale concerning the necessity for expert testimony as to recklessness in a medical malpractice context. Therefore, this court does not interpret Tatum to hold that expert testimony is required to establish reckless or wanton conduct in a medical malpractice action.
In Campbell v. Palmer, 20 Conn. App. 544,568 A.2d 1064 (1990), the trial court granted summary judgment for the defendant because the plaintiff's expert witness did not testify that the defendant's actions constituted malpractice. In reversing the decision of the trial court, the Appellate Court stated, "[I]t is not necessary . . . for the expert witness specifically to label a defendant's conduct as malpractice. . . ." in order for the jury to reach a conclusion as to liability. 20 Conn. App. at 548. The Campbell court held that an expert need only testify as to the applicable standard of care and that the standard had been breached in order to allow the jury to reach a conclusion on whether the breach was actionable conduct. The court cited CT Page 2669 Slimak v. Foster, 106 Conn. 366, 370, 138 A. 113 (1927), in noting that ". . . to demand a positive condemnation of the operator's course as a prerequisite to recovery would in such case be prohibiting of any recovery therein." 20 Conn. App. at 548.
The Connecticut Supreme Court has stated:
 "`While the standard of care, skill and diligence is a matter of expert opinion and knowledge, the determination of the facts concerning the conduct under consideration is always for the jury. Snyder v. Pontaleo, supra, 295." Lovett v. Etkind, 158 Conn. 567, 575, 265 A.2d 70
(1969).
The rationale for requiring expert testimony about standard of care in medical malpractice cases is that as laymen, jurors lack requisite knowledge as to medical standards. See Selnitz v. Greenberg, supra. However, once expert testimony provides jurors with such knowledge, they are able to make the factual determination as to whether the conduct in question was actionable at all, negligent, or reckless or wanton. The plaintiffs have submitted competent expert deposition testimony as to the applicable standard of care, and its violation.
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party. Maruca v. Standard, 19 Conn. App. 16,19, 559 A.2d 1167 (1989). In so doing, it appears that the evidence submitted by the plaintiff in opposition to the Motion for Summary Judgment is sufficient to permit a jury to find that the defendant Izard's acts or failure(s) to act constituted reckless and wanton misconduct. Therefore, the motion is denied as to the Sixth Count.
In the Eighth, Eleventh and Fourteenth Counts of the complaint the plaintiffs allege that "[t]he Defendant Hartford Dialysis, informed the plaintiffs that the decedent, Czeslaw Szymanski, died of natural causes when it knew this to be false." Hartford Dialysis is a trade name of the defendant Mark Izard. Therefore, the Eighth, Eleventh and Fourteenth Counts are directed at the CT Page 2670 defendant Izard individually. Those counts allege causes of action for intentional infliction of emotional distress (Eighth Count), intentional misrepresentation (Eleventh Count) and negligent misrepresentation (Fourteenth Count). In order to prevail on any of those three Counts the plaintiffs must prove that the defendant Izard informed them that the decedent died of natural causes when he knew this was false.
The defendant Izard has introduced his own deposition testimony and the deposition testimony of several plaintiffs, all of which indicates that Izard spoke to only one of the plaintiffs, Irene Mabzieja, following Czeslaw Szymanski's death. However, Izard made no representations about the decedent's death to Irene Mabzieja.
In response to the Motion for Summary Judgment the plaintiffs do not dispute that Izard never made statements to them concerning the cause of the decedent's death. Rather, they argue at length that it is a question of fact as to whether persons who did make statements to the plaintiffs were agents of Hartford Dyalisis. The problem with such arguments is that they ignore the language of the Eighth, Eleventh and Fourteenth Counts. Unlike the Third and Fifth Counts, which allege the vicarious liability of Izard for the acts of his "agents servants, employees, and/or individuals subject to his control and direction", the Eighth, Eleventh and Fourteenth counts contain no allegations of vicarious liability.
There is clearly a difference between direct individual liability and vicarious liability. See e.g. Nowak v. Nowak, 175 Conn. 112, 126, 394 A.2d 716 (1978). If the plaintiffs were relying on a theory of agency, then they should have pled agency. Conn. Practice Book 109 requires that "an act or promise by a principal, other than a corporation, if in fact proceeding from an agent known to the pleader" should be specifically pled.
Unlike a corporation, which can act only through an agent or servant, a sole proprietor can act alone. In this case the plaintiffs have alleged that defendant Izard did act alone.
Even if the Eighth, Eleventh and Fourteenth counts did allege that misrepresentations concerning the cause of the decedent's death were made by agents of Izard, the plaintiffs CT Page 2671 have offered no evidence of such agency relationship. The plaintiffs and the defendant agree that Dr. Lawlor has been identified as a person who allegedly made representations to the plaintiffs concerning the cause of decedent's death. have alleged that Dr. Lawlor was an agent, employee, and/or servant of defendant Hartford Hospital and Dr. Lawlor testified at his deposition that he was a cardiology resident at Hartford Hospital. The plaintiffs must present some evidence to support an agency claim in order to defeat a motion for summary judgment. See Velardi v. Rider Truck Rental, Inc., 178 Conn. 371, 423 A.2d 77 (1979). For the foregoing reasons the Motion for Summary Judgment is granted as to the Eighth, Eleventh and Fourteenth counts of the complaint.
By The Court Aurigemma, J.