[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 17, 1992, the defendant, John McHugh, a podiatrist, performed surgery on the plaintiff, Harold Stowe, a diabetic with a hip prosthesis, to remove the toenail and nail plate from the plaintiff's great right toe. On December 20, 1992, Stowe was admitted to Waterbury Hospital due to an infection, and on December 28, 1992, he was discharged. Finally, in March, 1993, Stowe's hip prosthesis was removed due to infection. On October 29, 1993, Stowe filed a complaint against McHugh alleging that McHugh "breached the standard of care applicable to doctors of podiatric medicine during and following the operation" performed on November 17, 1992. (Complaint, ¶ 3). Stowe further alleges that as a result of McHugh's negligence, he suffered, inter alia, an "infection in the right lower leg and hip requiring removal of [his] hip prosthesis." Id., ¶ 4(d).
On June 28, 1994, McHugh, filed a motion to cite in Darrell Daniels, an internist; William Fisher, an orthopedic surgeon; George Thornton, an infectious disease specialist; and Waterbury Hospital on the ground that "the care and treatment rendered to CT Page 5659 the plaintiff [by these proposed party defendants from December 20, 1992 to December 28, 1992] was not appropriate and was a deviation from the standard of care . . . ." (Motion to Cite in Party Defendants, p. 2).
On September 29, 1994, the court, West, J., issued a memorandum of decision on McHugh's motion to cite in Daniels, Fisher, Thornton, and Waterbury Hospital for purposes of apportionment under General Statutes § 52-572h(c).[1] The court found that General Statutes § 52-572h(c) requires that "in order to fully apportion fault, all persons potentially liable for the plaintiff's injuries should be made party defendants to the plaintiff's action." (Memorandum of Decision, p. 7). Accordingly, because McHugh alleged that the proposed defendants are partially responsible for the plaintiff's injuries, due to their allegedly negligent treatment of the plaintiff's infection, the court, West, J., granted McHugh's motion to cite in Daniels, Fisher, Thornton, and Waterbury Hospital.
On October 18, 1994, Stowe filed a motion to reargue his objection to McHugh's motion to cite in Fisher, Daniels, Thornton, and Waterbury Hospital on the ground that although General Statutes § 52-190a[2] requires the filing of a good faith certificate in a medical malpractice action, he does not have such a belief. Stowe, therefore, argues that the court should not order the plaintiff to amend his complaint to "state the proposed defendants' interests in the action and to summon them to appear as defendants." (Motion to Reargue, p. 3). Stowe argues that instead, McHugh should file cross-claims against Fisher, Daniels, Thornton and Waterbury Hospital. On October 20, 1994, the court, West, J., granted the plaintiff's motion to reargue.
On January 18, 1995, the court, West, J., issued a memorandum of decision on Stowe's motion to reargue and reconsider his objection to McHugh's motion to cite in the additional parties finding that "the plaintiff need only allege that the proposed defendants have been cited in as party defendants for the purposes of apportionment pursuant to the court's order granting the original defendant's motion. Consequently General Statutes § 52-109a [52-190a] is not implicated." (Memorandum of Decision Re Plaintiff's Motion to Reargue and Reconsider, p. 4).
On January 27, 1995, Stowe filed a motion to cite in CT Page 5660 Fisher, Thornton, Daniels, and Waterbury Hospital as party defendants. The court, West, J., ordered Stowe to amend his complaint on or before February 23, 1995 "to state facts showing the interests for the purpose of apportionment of William Fisher . . . George Thornton (c/o Roberta Y. Thornton, Executrix of the Estate of George Thornton)[3] . . . Darrell Daniels . . . and the Waterbury Hospital . . . ." (Motion to Cite in Party Defendants, p. 2). On the same date, the plaintiff filed a five-count amended complaint, directing Count One at McHugh, Count Two at Fisher, Count Three at Thornton, Count Four at Daniels, and Count Five at Waterbury Hospital. Paragraph 4 of Counts Two, Three, Four, and Five respectively allege that Daniels, Fisher, Thornton, and Waterbury Hospital were negligent in their "care and treatment of the plaintiff during the time period December 20, 1992 to December 28, 1992, by failing to properly diagnose and treat the plaintiff's condition."
On March 4, 1996, Daniels filed a motion for withdrawal on the ground that "[n]o party has produced a similar health care provider who will offer any criticisms of Dr. Daniels at trial." (Daniels' Motion for Withdrawal, ¶ 11). On March 5, 1996, Fisher filed a motion for withdrawal, based on the same ground and incorporating Daniels' motion. On March 7, 1996, Waterbury Hospital and the Estate of Dr. Thornton filed a motion for withdrawal, also based on the same ground and incorporating Daniels' motion.
On March 6, 1996, McHugh filed a memorandum in opposition to the motions for withdrawal arguing that "the decision to release Mr. Stowe from the Hospital on December 28, 1992 with an elevated sed rate and an elevated white blood count failed to meet the standard of care." (Defendant's Memorandum in Opposition to Motions for Withdrawal, p. 1). McHugh further argued that Connecticut does not recognize a motion for withdrawal.
On March 6, 1996, the court, Kulawiz, J., denied Daniels' motion for withdrawal. On March 25, 1996, the court, Pelligrino, J., denied the motion for withdrawal filed by the Estate of Dr. Thornton and Waterbury Hospital on the ground that such a motion is not proper.
On April 1, 1996, Daniels filed a motion for summary judgment with respect to Count Four of Stowe's amended complaint on the ground that "[a]s set forth in the depositions of the CT Page 5661 various experts in this matter, no expert testimony will be offered as to the standard of care applicable to an internist, any breach of such standard by Dr. Daniels, or any causal connection between any such breach and the plaintiff's claimed injuries. Consequently Daniels is entitled to judgment as a matter of law." (Daniels' Motion for Summary Judgment, p. 1). On the same date, as required by Practice Book §§ 204 and 380, Daniels filed a memorandum in support of his motion for summary judgment.
On April 2, 1996, Fisher filed a motion for summary judgment with respect to Count Two of Stowe's amended complaint on the ground that "as no requisite expert testimony will be offered at trial necessary for a finding of liability against Defendant Fisher, an orthopedic surgeon, no genuine issue of material fact exists with respect to the claims alleged against him, and therefore, he is entitled to judgment as a matter of law." (Fisher's Motion for Summary Judgment). On the same date, as required by Practice Book §§ 204 and 380, Fisher filed a memorandum in support of his motion for summary judgment.
On April 3, 1996, Waterbury Hospital and the Estate of Dr. Thornton filed a motion for summary judgment with respect to Counts Three and Five of Stowe's amended complaint joining in Daniels and Fisher's motions for summary judgment. On April 24, 1996, Waterbury Hospital and the Estate of Dr. Thornton filed a supplemental motion for summary judgment on the ground that "[i]n the depositions of the various experts in this matter, no expert testimony was offered as to the standard of care applicable to a Hospital or an infectious disease specialist. Nor was there any causal connection between any breach and the plaintiff's claimed injuries." (Waterbury Hospital's and the Estate of Dr. Thornton's Supplemental Motion for Summary Judgment, p. 1). On the same date, Waterbury Hospital and the Estate of Dr. Thornton filed a memorandum in support of their supplemental motion for summary judgment.
On April 10, 1996, McHugh filed a memorandum in opposition to these motions for summary judgment arguing that there is expert testimony, in the form of affidavits from a Howard Harinstein and himself, both podiatrists. In addition, McHugh states that "it is this defendant's position that the matter can go to the jury on a simple negligence theory." (Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 1) (Memorandum in Opposition). CT Page 5662
The issue here is whether the motions for summary judgment filed by the defendants, Darrell Daniels, William Fisher, Waterbury Hospital, and the Estate of George Thornton, be granted on the ground that in this medical malpractice action, the parties have failed to establish, by expert testimony, the standard of care and breach of that standard.
The parties have failed to establish, by expert testimony, the standard of care applicable to the movants and breach of that standard. Therefore the court grants the motions for summary judgment filed by Darrell Daniels, William Fisher, Waterbury Hospital, and the Estate of George Thornton.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Citations omitted.) Wilson v. New Haven,213 Conn. 277, 279, 567 A.2d 829 (1989). The summary judgment procedure "`is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial.'" Mac'sCar City, Inc. v. American National Bank, 205 Conn. 255, 261,532 A.2d 1302 (1987).
The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 105, 639 A.2d 507 (1994). "[T]he party opposing . . . a motion [for summary judgment] must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381." Id.
"`To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts which contradict those stated in the movant's affidavits and documents.'" ConnecticutNational Bank v. Great Neck Development, 215 Conn. 143, 148,574 A.2d 1298 (1990). Therefore, "`[i]t is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, CT Page 5663 cannot refute evidence properly presented to the court [in support of a motion for summary judgment].'" Barrett v. DanburyHospital, 232 Conn. 242, 255, 654 A.2d 748 (1995). Accordingly, "`[w]hen a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by § 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant.'" Catz v. Rubenstein,201 Conn. 39, 49, 513 A.2d 98 (1986).
The standard of review of a trial court's decision to grant a motion for summary judgment is well established. WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 246,618 A.2d 506 (1992). "Pursuant to Practice Book § 384, summary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Suarez v. Dickmont PlasticsCorp., supra, 229 Conn. 105. "`The test [for the granting of a motion for summary judgment] is whether a party would be entitled to a directed verdict on the same facts.'" Id., 105-06. A directed verdict is appropriate when the jury could not reasonably and legally have reached any other conclusion. Boehmv. Kish, 201 Conn. 385, 393 n. 4, 517 A.2d 624 (1986).
The present case is a medical malpractice action. In order to prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. Williams v.Chameides, 26 Conn. App. 818, 822, 603 A.2d 1211 (1992). In a medical malpractice action, expert testimony is required to establish the standard of professional care to which the defendant is held and that the defendant failed to conform to that standard of care. Mather v. Griffin Hospital, 207 Conn. 125,130-31, 540 A.2d 666 (1988).[4] Expert testimony is necessary to establish the standard of proper professional skill or care on the part of a physician, surgeon or other similar practitioner because in most cases a layman does not and cannot have the requisite knowledge as to whether the proper treatment was given, procedure followed, or care used. Shelnitz v.Greenberg, 200 Conn. 58, 66, 509 A.2d 1023 (1986).
"It is well settled that the plaintiff cannot prevail CT Page 5664 unless there was positive evidence of an expert nature from which the jury could reasonably conclude that the defendant was negligent, except where there is manifest such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence that the testimony of an expert is not necessary." Puro v. Henry, 188 Conn. 301, 305, 449 A.2d 176
(1982). In Connecticut, "decisions indicating that the exception to the general requirement of expert testimony in medical malpractice cases might be applicable have involved foreign objects discovered in the body of a patient after surgery or abnormal injuries sustained during surgery."Bourquin v. Melsungen, 40 Conn. App. 302, 314, 670 A.2d 1322
(1996).
In their motions for summary judgment, Fisher, Daniels, the Estate of Dr. Thornton and Waterbury Hospital argue that no expert testimony has been offered with respect to the applicable standard of care and a breach of that standard. In opposition, McHugh argues that the expert testimony offered by both himself and Harinstein, both podiatrists, are sufficient and, in the alternative, that the allegations regarding Fisher, Daniels, Thornton, and Waterbury Hospital constitute ordinary negligence, not medical malpractice. The first issue to be addressed is the sufficiency of the expert testimony[5] with respect to each apportionment defendant and then, if such testimony is insufficient, determine whether McHugh's allegations constitute negligence, rather than medical malpractice.
A. Dr. Fisher
Atlas, in his deposition, stated that at trial, he is not intending to testify whether Fisher deviated from the applicable standard of care. (Memorandum of Law in Support of Motion for Summary Judgment of Defendant William H. Fisher, Jr., M.D., Exhibit A) (Fisher's Memorandum in Support). Snydman similarly testified that he is not intending to testify at trial that Fisher fell below the standard of care in his treatment of Stowe. (Fisher's Memorandum in Support, Exhibit B). Weissinger testified that he has no clinical opinion with respect to the care and treatment rendered to Stowe by Fisher and that, at trial, he is not intending to offer a critical opinion of Fisher's care and treatment of Stowe. (Fisher's Memorandum in Support, Exhibit C). Harinstein testified that he has no expert opinion with respect to whether Fisher breached the applicable standard of care in his treatment of Stowe, and, therefore, at CT Page 5665 trial, is not intending to testify that Fisher breached the applicable standard of care. (Fisher' Memorandum in Support, Exhibit D). Finally, McHugh testified that, in his expert opinion, Fisher did not deviate from the standard of care with respect to his treatment of Stowe. (Fisher's Memorandum in Support, Exhibit E).
In opposition to all of the motions for summary judgment, McHugh offers affidavits by himself and Harinstein.[6] Both affidavits state "[i]t is in my professional opinion that the decision to discharge Harold Stowe on December 28, 1992, with a sedimentation rate of 103 and a white blood count of 13,400 fell below the standard of care." (Memorandum in Opposition, Affidavits of McHugh and Harinstein, ¶ 7). While it is not necessary "for the expert witness to specifically label a defendant's conduct as malpractice . . . ." the expert must testify to the applicable standard of care and a breach of that standard. Campbell v. Palmer, 20 Conn. App. 544, 548,568 A.2d 1064 (1990).
In Campbell v. Palmer, supra, 550 n. 3, a medical malpractice action based on failure to diagnose rectal cancer, the expert testified that there was "`a suspicious area on the spot film that warranted further investigation and was in the very location where the tumor was subsequently demonstrated.'" The expert further testified that he was "`certain that the tumor was present at the time of the barium enema performed by Dr. Tighe . . . .'" Id. The expert finally testified that "`if [he had] done that examination, and those were the films that [he] saw in the office, [he] would either have done it (repeated the barium enema) [himself] or suggested it to the referring physician.'" Id. Based on this expert testimony, the court found that the expert "did sufficiently testify to a breach of the standard of care . . . ." Id., 549.
In the present case, neither the affidavit of McHugh nor that of Harinstein indicates that Fisher's care or treatment of Stowe fell below the standard of care. In addition, as noted above, in his deposition, Harinstein testified that he has no expert opinion as to whether Fisher's treatment of Stowe fell below the standard of care. Moreover, in his deposition, McHugh testified that Fisher's treatment of Stowe did not fall below the standard of care. Therefore McHugh fails to provide sufficient expert testimony with respect to the standard of care applicable to Fisher and a breach of that standard. CT Page 5666
B. Dr. Daniels
Atlas, in his deposition, testified that he is not intending to offer a critical opinion of Daniels. (Daniels' Memorandum in Support of Motion for Summary Judgment, Exhibit A) (Daniels' Memorandum in Support). Snydman testified that in his opinion, Daniels' treatment of Stowe did not fall below the standard of care. (Daniels's Memorandum in Support, Exhibit B). Harinstein testified that he does not have an opinion of Daniels' care and treatment of Stowe and that, at trial, he is not intending to offer any opinion of Daniels with respect to his care and treatment of Stowe. (Daniels' Memorandum in Support, Exhibit C). Weissinger testified that he has does not have a critical opinion of the treatment rendered to Stowe by Daniels and that, at trial, he is not intending to offer a critical opinion of Daniels' treatment of Stowe. (Daniels' Memorandum in Support, Exhibit D). Finally, McHugh testified that, in his expert opinion, Daniels did not breach the applicable standard of care and that, at trial, he does not intend to testify that Daniels breached the standard of care. (Daniels' Memorandum in Support, Exhibit E).
As previously mentioned with respect to Fisher, in opposition, McHugh offers affidavits by himself and Harinstein criticizing the decision to discharge Stowe on December 28, 1992 based on the sedimentation rate and the white blood cell count. Neither affidavit states that Daniels' care or treatment of Stowe fell below the standard of care. In addition, as noted above, in his deposition, Harinstein testified that he has no expert opinion with regard to whether Daniels' treatment of Stowe fell below the standard of care. Moreover, in his deposition, McHugh testified that Daniels' treatment of Stowe did not fall below the standard of care. Therefore McHugh fails to provide sufficient expert testimony with respect to the standard of care applicable to Daniels and whether there was a breach of that standard.
C. Dr. Thornton and Waterbury Hospital
The only expert to address the conduct of Thornton and Waterbury Hospital was Weissinger, who testified that he has no opinion "with respect to the care and treatment rendered Mr. Stowe by any of the Waterbury Hospital physicians in this matter . . . ." (Fisher's Memorandum in Support, Exhibit C). Although CT Page 5667 none of the remaining experts testified that they either have no critical opinion of the care and treatment rendered to Stowe by Thornton and Waterbury Hospital or that the care and treatment rendered to Stowe by Thornton and Waterbury Hospital did not fall below the applicable standard of care, they also did not testify as to the applicable standard of care or whether Thornton or Waterbury Hospital breached that standard.
In Butcher v. Saint Francis Hospital, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0514585 (November 15, 1995, Sheldon, J.), the court similarly found that "no expert testimony ha[d] been offered against the defendant McNomee . . . ." The court, therefore, held that "summary judgment must be granted in her favor." Id. McHugh fails to provide sufficient expert testimony with respect to the standard of care applicable to Thornton and Waterbury Hospital and whether there was a breach of that standard.[7]
D. Do Dr. McHugh's Allegations Constitute Medical Malpractice or Negligence?
In the present case, McHugh briefly suggests, without explanation, that the alleged conduct of Daniels, Fisher, Thornton, and Waterbury Hospital could constitute negligence, rather than malpractice.[8] (Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 1). "Malpractice is commonly defined as `the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . .' Webster, New Third International Dictionary; Black's Law Dictionary (5th Ed. 1979)." Bourquin v. Melsungen,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0346322 (July 19, 1993, Hennessey, J., Memorandum of Decision on Defendant Stephen Lange, M.D.'s Motion for Summary Judgment).
In Bourquin v. Melsungen, supra, the plaintiff filed a complaint against several defendants, including Saint Francis Hospital and Medical Center (Saint Francis) and Stephen C. Lange, M.C. "The plaintiff alleged that Saint Francis purchased . . . Lyodura[, human dura mater tissue,] . . . and that Lange, a neurosurgeon, while performing brain surgery on Gayle Bourquin at Saint Francis, replaced some of the dura mater around her CT Page 5668 brain with a graft of the Lyodura. The plaintiff alleged that his wife's illness and death resulted from Cruetzfeld-Jakob disease, which she contracted from the Lyodura graft." Id. The court subsequently addressed two motions for summary judgment, one by St. Francis and another by Lange.
In addressing Lange's motion for summary judgment, the court found that "[t]he gravamen of the plaintiff's complaint with respect to Lange is that he did not exercise the degree of skill and learning commonly applied under all the circumstances by the average prudent neurosurgeon in investigating the source of a dura mater graft he was going to implant in the plaintiff during brain surgery." Id. The court held that "[t]he allegations of the plaintiff's complaint revolve around the conduct of Lange in the practice of his profession and his use of a product in performing surgery, and are not allegations of `ordinary negligence,' as the plaintiff asserts[,]" granting Lange's motion for summary judgment. Id.
In addressing Saint Francis' motion for summary judgment, the court found that "[t]he gravamen of the plaintiff's complaint with respect to Saint Francis is that it did not meet the standard of care required of hospitals purchasing human dura mater tissue and supplying it for use in surgery." Bourquin v.Melsungen, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0346322 (July 19, 1993, Hennessey, J., Memorandum of Decision on Defendant Saint Francis Hospital's Motion for Summary Judgment). The court held that "[t]he allegations of the plaintiff's complaint revolve around the conduct of the hospital, its agents, servants or employees, in its capacity or function as a hospital providing medical care and treatment to patients such as the plaintiff's wife. As such, the plaintiff's claims are not allegations of `ordinary negligence,' as the plaintiff asserts." Id. The court, therefore, granted Saint Francis' motion for summary judgment. On appeal, however, the court reversed the judgment in favor of Saint Francis on the ground that the plaintiff's claim that Saint Francis was negligent in failing to investigate the source of the Lyodura, in light of alleged warnings on the packages, "does not present an `esoteric or uniquely medical issue' requiring expert testimony for its determination." Bourquin v.Melsungen, supra, 40 Conn. App. 316.
In the present case, McHugh specifically alleges that "the care and treatment rendered to the plaintiff [by Fisher, CT Page 5669 Daniels, Thornton, and Waterbury Hospital] was not appropriate and was a deviation from the standard of care in that the Waterbury Hospital and these physicians failed to properly diagnose and treat the plaintiff's condition; in that the IV antibiotic, oxacillin given to the plaintiff from 12/20/92 to 12/28/92 merely suppressed the infection and failed to cure the infection; in that antibiotics should have been prescribed for at least six weeks following the plaintiff's discharge from the Waterbury Hospital on 12/28/92; in that Drs. Darrell Daniels, George Thornton and William Fisher failed to order proper and timely bone blood tests to determine the level of the plaintiff's blood sugar; in that these physicians ignored the sedimentation rate of 103 and in that these physicians discharged the plaintiff from the hospital on 12/28/92 prematurely, and before the infection was under control and failed to recognize that the plaintiff was suffering from a deep infection based upon the sedimentation rate of 103." (Motion to Cite in Party Defendants, p. 2).
The standard of care with respect to the proper diagnosis and treatment of Stowe, the antibiotics that should have been prescribed, the length of time antibiotics should have been prescribed to cure the infection, the proper blood tests, the timing of such blood tests, and the timing of Stowe's discharge is not within common knowledge of laymen. Therefore, McHugh's allegations do not constitute gross negligence. This case is one of medical malpractice, and not ordinary negligence and therefore expert testimony is required to establish the standard of care and failure to conform to that standard. See Mather v.Griffin Hospital, supra, 207 Conn. 130-31.
Connecticut courts have "approved the grant of a summary judgment in a medical malpractice case when . . . it is evident that the plaintiff will be unable to produce at trial an expert witness to testify regarding the applicable standard of care."Bourquin v. Melsungen, supra, 40 Conn. App. 314. In the present case, it appears that expert testimony has not been offered and will not be offered establishing the applicable standard of care and breach of that standard with respect to Fisher, Daniels, Thornton and Waterbury Hospital. Therefore Fisher's motion for summary judgment with respect to Count Two of Stowe's amended complaint, the Estate of Dr. Thornton's motion for summary judgment with respect to Count Three, Daniels' motion for summary judgment with respect to Count Four, and Waterbury Hospital's motion for summary judgment with respect to Count CT Page 5670 Five, are all granted.
KULAWIZ, J.