[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action the plaintiff, Donna St. George, alleges that the defendant, Peter E. Pascal, a board-certified orthopedic surgeon, committed medical malpractice in the performance of a varus high tibial osteotomy which he performed on the plaintiffs right leg on September 30, 1994 and in various aspects of his subsequent treatment of the plaintiff. Specifically, the Amended Complaint dated July 7, 1997 alleges that the injuries and damages incurred by the plaintiff were cause by the negligence of the defendant in that:
 a. During the varus high tibial osteotomy performed on September 30, 1994, Dr. Pascal negligently over-correct the angle of the right proximal tibia;
 b. During said Varus high tibial osteotomy, he negligently stretched and damaged the Plaintiff's peroneal nerve;
 c. During said Varus high tibial osteotomy, he negligently made the osteotomy cut too high up on the tibia;
 d. During the procedure performed on October 4, 1994, the Defendant doctor negligently applied the external fixator causing the tibia to break;
e. The technical performance of the Varus high tibial osteotomy CT Page 11865 performed by Dr. Pascal deviated from the reasonable medical standard of care and below the acceptable standard for orthopedic practice and;
 f. The technical performance of the application of the external fixator performed by Dr. Pascal deviated from the reasonable medical standard of care and below the acceptable standard for orthopedic practice.
After a trial to the court, the court makes the following findings of fact. The plaintiff, whose date of birth is December 12, 1949, was first treated by the defendant in the fall of 1990. Dr. Pascal diagnosed her condition as a torn meniscus, and, thereafter, performed successful arthroscopic surgery on the plaintiffs right knee. The defendant next treated the plaintiff July of 1993 when he repaired a torn anterior cruciate ligament in the plaintiffs right knee. During that procedure Dr. Pascal noticed significant arthritis in the lateral (outside) compartment of the plaintiffs knee.
In November and December, 1993, the defendant treated the plaintiff for damage to the extensor tendon in her right toe, which she sustained in an auto accident. After that time the arthritis in the plaintiffs right knee worsened, causing her considerable pain. Mrs. St. George was also considerably overweight, which exacerbated her knee problem Dr. Pascal treated the knee with prescriptions of Naprosin. However, after a certain time that drug became less effective at relieving the plaintiffs knee pain.
In the spring of 1994 Dr. Pascal advised the plaintiff that her age, 44 years at the time, made her too young to be a candidate for a total knee replacement. He told her about a procedure known as a varus high tibial osteotomy in which a wedge of bone is cut out of the uppermost portion of the tibia, or shin bone, in an effort to change the alignment of the knee so that more weight is put on the portion of the knee which does not have arthritis. He also told the plaintiff that the goal of this procedure would be to relieve the pain in her knee until she was old enough to be a candidate for a total knee replacement at approximately age 55.
Mrs. St. George decided to have the varus high tibial osteotomy. Prior to the time she underwent the procedure, Dr. Pascal advised her that the stretching of the peroneal nerve, which runs through the leg, and controls sensations to the foot, CT Page 11866 was a known risk of the procedure. The procedure was scheduled for September 30, 1994 at Johnson Memorial Hospital. Prior to performing the procedure, Dr. Pascal had full standing x-rays of the plaintiff taken so he could better determine the angle of the plaintiffs knee.[1] Dr. Pascal measured that the plaintiff had a 7-8 degree valgus (knock-kneed) deformity of the right leg. He determined that he would correct the deformity by 10 degrees, which would leave the plaintiff with an approximate 2 degree varus angle of her right knee. According to Dr. Samuel Doppelt, a board certified orthopedic surgeon who has been the chief of orthopedic surgery at Cambridge Health Alliance in Boston for ten years, the preoperative procedures, the high tibial osteotomy and the application of the external fixator by Dr. Pascal were all clearly within the accepted standard of care for orthopedic surgeons. Dr. Pascal operated completely in accordance with the method suggested by Campbell's Operative Orthopedics, Eighth Edition, and Dr. Coventry, a physician considered to be the seminal expert in the area of high tibial osteotomies. The Coventry method dictated that one millimeter of bone be removed from the tibia for every one degree of knee angle correction desired. According to Dr. Doppelt, the foregoing is the method followed by "everyone in the world" who performs a high tibial osteotomy.
During the operation Dr. Pascal removed a wedge of bone from the proximal tibia by first inserting a pin parallel with the bone joint and then making the cut parallel to the joint He cut out a triangular shaped wedge of bone which was 1 centimeter (10 millimeters) at the base, 6 centimeters long and 4 centimeters deep. He then closed the osteotomy site with surgical staples and put a cast on the plaintiffs right leg.
Immediately after the operation Dr. Pascal believed that the operation had been a success. However approximately 36 hours after the operation, the plaintiff began complaining about tingling and numbness in her foot. When that condition persisted, Dr. Pascal suspected that the peroneal nerve had been stretched or entrapped. He advised the plaintiff that he had to remove the cast and perform surgery to ascertain the condition of the peroneal nerve. He also advised the plaintiff that if he found that the nerve was too taut, he would have to remove the surgical staples from the osteotomy site, and put an external fixator device on the plaintiffs leg in order to stabilize the knee and to close the osteotomy slowly over time so that the nerve could adjust to the stretch.
On October 4, 1994 Dr. Pascal performed the external fixator CT Page 11867 procedure on the plaintiff's knee after he determined that the peroneal nerve was taut, but not entrapped. The plaintiff was released from the hospital on October 11, 1994. She returned to Dr. Pascal's office intermittently so that he could adjust the fixator and close the osteotomy site overtime. On December 8, 1994 the external fixator was removed from the plaintiffs leg. According to Dr. Doppelt, an x-ray of the right leg taken at that time shows that the leg was straight, and not bowed in or out.
The foregoing x-ray caused Dr. Doppelt to disagree markedly with the opinion of Dr. Kevin Lynch, a board certified orthopedic surgeon called as an expert witness by the plaintiff. Dr. Lynch testified that the size of the bone wedge cut by Dr. Pascall was 26 millimeters instead of 10 millimeters and that the plaintiff had an 18 degree varus malalignment after the high tibial osteotomy. Dr. Doppelt pointed out that due to the size of the bone in question, it was not possible to cut a 26 millimeter wedge at the osteotomy site without impacting the connection between the knee and the tibia, which did not occur. He also opined that Dr. Lynch had based his opinion on an x-ray which was backwards and which showed the knee with the staples taken out of the osteotomy site. Therefore, the knee was "free floating", its angle constantly changing.
Dr. Doppelt also testified that the first osteotomy cut made by Dr. Pascal was horizontal to the joint surface, as the standard of care required . . . Dr. Lynch testified that Dr. Pascal's first cut deviated from the standard of care because it was not horizontal to the joint surface. Based on the testimony of Dr. Doppelt and a review of the available x-rays, the court finds that the first cut was horizontal to the joint surface and did not deviate from the standard of care. The court also finds that the stretching of the peroneal nerve and slow healing of the osteotomy site were known risks of properly performed surgery, and did not evidence any violation of the standard of care by Dr. Pascal.
The plaintiff continued to treat with Dr. Pascal from December, 1994 until April 1996. By March of 1995 the plaintiff's ambulation was improving. In September, 1995 the plaintiff was walking well for long distances with the use of an ankle-foot orthosis, a device placed on the foot to aid in walking. In 1995 Dr. Pascal sent the plaintiff to a neurologist, Dr. Competiello, and his report indicated that the peroneal nerve had improved remarkably. By February of 1996 the plaintiff was able to walk without the use of the ankle-foot orthosis. Dr. Pascal last saw CT Page 11868 Mrs. St. George on April 30, 1996 at which point she had improved to a sufficient degree that she no longer required regular check-ups. Dr. Pascal told the plaintiff to return in six months.
The plaintiff began treating with Dr. Cooper, an orthopedic surgeon from the University of Connecticut Health Center, on May 21, 1996. Thereafter she treated with Dr. Lewis, an associate of Dr. Cooper. Dr. Lewis' initial impression of the plaintiff was that the principal cause of the plaintiffs knee pain was arthritis of the knee. In 1998 Dr. Lewis performed an arthrodesis, or knee fusion, on the plaintiffs right knee. Thereafter she was unable to bend her knee, but had no more pain from the arthritis in her right knee.
In order to prevail here, the plaintiff must establish through expert testimony what the standard of care was at the time of the alleged malpractice and that Dr. Pascal's conduct fell below the standard of care for physicians engaged in the same area of practice during the period of time in which Dr. Pascal was treating her. Logan v. Greenwich Hospital Ass'n,191 Conn. 282, 301, 465 A.2d 294 (1983); Campbell v. Palmer,20 Conn. App. 544, 548, 568 A.2d 1064 (1990); Katsetos v. Nolan,170 Conn. 637, 644-45, 368 A.2d 172 (1976). Based on the evidence described above, the court finds that Dr. Pascal acted in accordance with the standard of care for physicians engaged in the same area of practice during the period of time in which he treated the plaintiff.
A physician is not negligent merely because the patient sustains injury or harm while under the physician's care. A physician does not and cannot guarantee the success of every surgical procedure. The lack of such success does not raise any presumption of malpractice by the physician. Sleavin v. GreenwichGyn. Obstetrics, P.c., 6 Conn. App. 340, 343, 505 A.2d 436
(1986). Mrs. St. George's continuing problems with her right knee after Dr. Pascal performed the high tibial osteotomy were very unfortunate, but were not caused by any malpractice on the part of Dr. Pascal.
Therefore, judgment may enter in favor of the defendant, Dr. Peter E. Pascal.
By the court,
Aurigemma, J. CT Page 11869